Troy Krich (CA Bar No. 262566)
troy@tomgallagherlaw.com
Gallagher Krich, APC
3033 Fifth Ave, Suite 222
San Diego, CA 92103
Tel: (858) 926-5797
Fax: (858) 435-4369

(additional counsel listed on signature page)

*Counsel for Defendants/Counter-Plaintiffs*
*Kitchen Cube LLC, Altamatic LLC, and*
*Insider Goods LLC, and Defendants Timothy A.*
*Duffy, Tyler Ruble, Randall Toltz, and Dylan Spencer*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| Tomas Leszczynski, <br><br> Plaintiff, <br><br> v. <br><br> Kitchen Cube LLC, Timothy A. Duffy, Altamatic LLC, Insider Goods LLC, Randall Toltz, Tyler Ruble, and Dylan Spencer, <br><br> Defendants. <br><br> —————————————————— <br><br> Kitchen Cube LLC, Altamatic LLC, and Insider Goods LLC, <br><br> Counter- Plaintiffs <br><br> v. <br><br> Tomas Leszczynski, <br><br> Counter-Defendant. | Case No. 8:23-cv-01698-MEMF-ADS <br><br> Hon. Maame Ewusi-Mensah Frimpong <br><br> **JOINT APPENDIX OF UNDISPUTED AND DISPUTED FACTS AND CONCLUSIONS OF LAW** |

[INSERT FROM EXCEL FILES]

| Movants' Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| 1. Plaintiff designed the "bakercube." Ex. 1.1 (printout of www.thingaverse.com/thing:2676324); Ex. 2 at 78 (Leszczynski Dep. Tr. (8/28/24)); Dkt. 1 at paras. 18-19 (Complaint). | Disputed | Exhibit 1.1 contains multiple versions of the Cube that Plaintiff created and posted on Thingiverse. See [Fact 34], [Fact 35], [Fact 36], [Fact 37]. Alternate versions shown in Exhibit 1.1 are irrelevant to these proceedings. Exhibit 2 (Deposition Transcript) is Barred: [Fact 52], [Fact 53]. | Plaintiff does not dispute the stated fact. Objections to the evidence cited are discussed in the objections to evidence. |
| 2. Plaintiff published 3-D printing files on a website that allowed anyone to view his design and download and use the files to make bakercubes. Ex. 1.1; Ex. 2 at 91; Dkt. 1 at paras. 18-19. | Disputed | Defendants' statement is inaccurate and misleading. Plaintiff never published the Cube 3D printing files to allow unrestricted use. The files were published under a Creative Commons Attribution-NonCommercial-NoDerivatives license [Fact 34], [Fact 35], [Fact 37].  Defendants misquote Dkt. 1, paras. 18-19, which clearly state: "provided under Creative Commons, non-commercial, no derivatives use license." Exhibit 2 (Deposition Transcript) is Barred: [Fact 52], [Fact 53]. | Plaintiff does not dispute the stated fact, but merely refers to his use of the Creative Commons license for context, which is provided in Fact #3. Objections to the evidence cited are discussed in the objections to evidence. |
| 3. Plaintiff purported to restrict the use of his design and the files to non-commercial purposes via the use of a "Creative Commons, non-commercial, no | Disputed | Defendants' statement is inaccurate. The Cube was provided under a Creative Commons Attribution-NonCommercial-NoDerivatives license, which explicitly requires attribution and prohibits commercial use and derivative works. Exhibit 2 | Plaintiff does not dispute any material aspect of the stated fact. Movants accept that the full title of the license is "Attribution- |

| | | | |
|---|---|---|---|
| derivatives" license. Ex. 1.2; Ex. 2 at 91; Dkt. 1 at para. 18. | | (Deposition Transcript) is Barred: [Fact 52], [Fact 53]. | NonCommerical-Noderivs 4.0 International" as reflected on Ex. 1.2, but note the shorter title was used by plaintiff in his original complaint, Dkt. 1 a para. 18. Objections to the evidence cited are discussed in the objections to evidence. |
| 4. Plaintiff claims that the Defendants used his design and/or his files to manufacture and sell injection-molded measuring cubes with a similar, though not identical, design to that of the bakercube. Dkt. 1 at para. 25. | Disputed | Defendants mischaracterize Plaintiff's claim. [Fact 40], [Fact 41], [Fact 42], [Fact 43], [Fact 44]. | Plaintiffs does not dispute the stated fact, which is a fair rephrasing of his allegation in his original complaint. Dkt. 1 at para. 25. |
| 5. On September 12, 2023, Plaintiff filed an application for a copyright in his design of the bakercube with the U.S. Copyright Office. Ex. 1.3 (Copy of E-File | Disputed | Exhibit 1.3 is incomplete as it does not include the pictures of the Cube that were submitted as part of the copyright application. As per Court Orders Dkt. 87 and 88, Plaintiff's first cause of action for Copyright Infringement (17 U.S.C. 501) was dismissed. This fact is therefore irrelevant | Plaintiff does not dispute the stated fact. Objections to the evidence cited are discussed in the objections to evidence. |

JOINT APPENDIX OF UNDIPSUTED/DISPUTED FACTS AND CONCLUSIONS OF LAW

| | | | | |
|---|---|---|---|---|
| Application, U.S. Copyright Office) | | | to the current proceedings and constitutes an attempt to misdirect the Court into a discussion about copyright. The Court has explicitly allowed Plaintiff's second cause of action, Violation of Creative Commons License Terms, to proceed. | |
| 6. On November 20, 2023, the Copyright Office refused Plaintiff's application "because it is a useful article that does not contain any separable, copyrightable authorship needed to sustain a claim to copyright," setting forth a summary of the applicable statutes, and stating: "We have examined your work, concluded that it is a useful article, and determined that it does not contain any separable design element that contains sufficient copyrightable authorship to support a registration. Consequently, we cannot register your | Disputed | This fact is irrelevant to the surviving causes of action in this case. As per Court Orders Dkt. 87 and 88, Plaintiff's first cause of action for Copyright Infringement (17 U.S.C. 501) was dismissed. The Court has allowed the second cause of action, Violation of Creative Commons License Terms, to proceed, which is independent of any copyright registration. | Plaintiff does not dispute the stated fact. Objections to the evidence cited are discussed in the objections to evidence. |

JOINT APPENDIX OF UNDIPSUTED/DISPUTED FACTS AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| copyright claim." Ex. 1.4 (U.S. Copyright Office letter to Leszczynski dated Nov. 20, 2023). | | | |
| 7. On December 18, 2023, Plaintiff submitted a request for reconsideration of the refusal of his registration, in which he submitted extensive argument and evidence that he contended demonstrated that his design was copyrightable under the Copyright Act. Ex. 1.5 (Copyright Office Appeal). | Disputed | This fact is irrelevant to the surviving causes of action in this case. As per Court Orders Dkt. 87 and 88, Plaintiff's first cause of action for Copyright Infringement (17 U.S.C. 501) was dismissed. The Court has allowed the second cause of action, Violation of Creative Commons License Terms, to proceed, which is independent of any copyright registration. | Plaintiff does not dispute the stated fact. Objections to the evidence cited are discussed in the objections to evidence. |
| 8. At no point during the pendency of, or briefing or argument on Defendants' motions to dismiss (which the Court first ruled upon on April 17, 2024 (Dkt. 87)), did Plaintiff disclose to Defendants or the Court that the Copyright Office had denied his application on the ground his design | Disputed | Defendants' statement is inaccurate. Plaintiff fully disclosed the details of the copyright application to Defendants, including the application URL, date, ID number, and name. Defendants acknowledged multiple times, including in Dkt. 44-3 and Deposition Exhibit #13, that they had unrestricted access to the U.S. Copyright Office website, enabling them to check the application's status 24/7 throughout the proceedings. Furthermore, the Court issued a draft ruling dismissing the first | Plaintiff does not dispute the stated fact. Plaintiff provides no citation for his alleged "disclosure" nor any evidence that hi ssubmissions or the decisions denying his registration were accessible online or that he ever disclosed |

| | | | |
|---|---|---|---|
| was a "useful article." Ex. 2 at 148-50. | | cause of action before this disclosure issue arose, and Plaintiff did not contest the Court's decision. As noted in Court Orders Dkt. 87 and 88, the Court allowed the second cause of action, Violation of Creative Commons License Terms, to proceed. This cause of action is distinct and does not depend on copyright registration. Exhibit 2 (Deposition Transcript) is Barred: [Fact 52], [Fact 53]. | the fact that the Copyright Office has denied his application on the ground his design was of an uncopyrightable "useful article" following the November 20, 2023, rejection or the April 24, 2024, rejection. Objections to the evidence cited are discussed in the objections to evidence. |
| 9. On April 24, 2024, the Copyright Office issued a decision again refusing to register a copyright for his design "because it is a useful article that does not contain any separable non-functional features." Ex. 1.6 at 1 (U.S. Copyright Office Letter to Leszczynski dated April 24, 2024). | Disputed | This fact is irrelevant to the current proceedings. As per Court Orders Dkt. 87 and 88, Plaintiff's first cause of action for Copyright Infringement (17 U.S.C. 501) was dismissed. The surviving claim in this case, Violation of Creative Commons License Terms, does not rely on copyright registration and remains unaffected by the Copyright Office's decision. | Plaintiff does not dispute the stated fact. Objections to the evidence cited are discussed in the objections to evidence. |
| 10. The Copyright Office's April 24, | Disputed | This fact is irrelevant to the current proceedings. As per | Plaintiff does not dispute the |

6

| | | | |
|---|---|---|---|
| 2024, decision set forth a detailed analysis why Plaintiff's design did not satisfy the separability test, concluding, among other things, that "each element of this measuring device is a utilitarian – as opposed to decorative – aspect of this useful article"; that the "components" of the design that Plaintiff argued were "creative" "do not have 'the capacity to exist apart from the utilitarian aspects'"; and that the fact the bakercube could be portrayed as a "'work of art' does not take it out of the 'useful article' category." Ex. 1.6 at 3. | | Court Orders Dkt. 87 and 88, Plaintiff's first cause of action for Copyright Infringement (17 U.S.C. 501) was dismissed. The surviving claim in this case, Violation of Creative Commons License Terms, does not rely on copyright registration and remains unaffected by the Copyright Office's decision. | stated fact. Objections to the evidence cited are discussed in the objections to evidence. |
| 11. On July 17, 2024, Defendants served Rule 34 document requests on Plaintiff asking for the production of, among other things, "All | Disputed | Defendants' Rule 34 document request served on July 17, 2024, seeking documents related to Plaintiff's copyright application, is improper and irrelevant. By that date, the Court had already dismissed the Copyright Infringement claim in its April | Plaintiff does not dispute the stated fact. His objection essentially admits that he failed to disclose |

| | | | |
|---|---|---|---|
| documents related to any effort to secure any patent, copyright, or trademark related to the cube …." Ex. 1.7 at para. 8 (Defendants' First Set of Document Requests to Plaintiff). | | 17, 2024 Order (Dkt. 87). The remaining cause of action—Violation of Creative Commons License Terms—is independent of any copyright registration or related proceedings. Furthermore, Plaintiff provided Defendants with sufficient information to access the status of the copyright application, including the application ID, date, name, and URL to the Copyright Office's portal, where the refusal and status were publicly available. Defendants, represented by five experienced counsels, had the ability to retrieve this information 24/7. Defendants' request for production of irrelevant and publicly accessible information contradicts the scope of discovery under Rule 26(b)(1), which limits discovery to matters relevant to the claims or defenses in the case. | anything regarding his copyright application, instead leaving defendants to do independent research to learn the particulars of the Copyright Office's rejection of his application, in an obvious and clear vioaltion of his discovery obligations. Objections to the evidence cited are discussed in the objections to evidence. |
| 12. Plaintiff never produced to Defendants either of the decisions of the Copyright Office denying registration of any copyright for his design. | Disputed | Plaintiff provided Defendants with all necessary information to access the Copyright Office's decisions. Specifically, Plaintiff disclosed the application ID, application date, name, and publicly accessible URL for the Copyright Office portal, where Defendants, represented by multiple attorneys, including copyright experts, had 24/7 access to the decisions and the application's status. By the time | Plaintiff does not dispute the stated fact. His objection essentially admits that he failed to disclose anything regarding his copyright application, instead leaving |

| | | | | |
|---|---|---|---|---|
| | | | Defendants made their request for production on July 17, 2024, the Court had already dismissed the Copyright Infringement claim in its April 17, 2024 Order (Dkt. 87). Therefore, any decisions by the Copyright Office were irrelevant to the remaining cause of action, Violation of Creative Commons License Terms, and Plaintiff was not obligated to produce materials unrelated to the surviving claims under Rule 26(b)(1). Furthermore, upon receiving Defendants' request, Plaintiff produced the requested documents within six hours, even though the request was made after discovery deadlines, demonstrating Plaintiff's transparency and cooperation. | defendants to do independent research to learn the particulars of the Copyright Office's rejection of his application, in an obvious and clear vioaltion of his discovery obligations. Objections to the evidence cited are discussed in the objections to evidence. |
| | 13. Plaintiff did provide Defendants with a copy of his December 18, 2023, submission to the Copyright Office, but only did so after it was specifically requested by Defendants during his deposition, which was taken on August 28, 2024. Ex. 2 at 150. | Disputed | Exhibit 2 (Deposition Transcript) is Barred: [Fact 52], [Fact 53]. Plaintiff responded to Defendants' direct request during the August 28, 2024, deposition and provided the requested documents on the same day, demonstrating full cooperation in the discovery process. By that date, Plaintiff was under no obligation to produce additional documents, as any formal request for production would have fallen after the close of discovery on September 4, 2024, as set forth in the Civil Trial Order. Defendants' failure to make a | Plaintiff does not dispute the stated fact. His objection essentially admits that he failed to disclose anything regarding his copyright application, instead leaving defendants to do independent research to learn the particulars of the Copyright |

| | | | |
|---|---|---|---|
| | | timely and proper request earlier underscores their attempt to manufacture a discovery issue where none exists, particularly given that Defendants, represented by multiple attorneys, had 24/7 access to the requested information through a publicly accessible online portal. | Office's rejection of his application, in an obvious and clear vioaltion of his discovery obligations. As stated in Fact 11, these documents were requested well before the close of fact discovery. Objections to the evidence cited are discussed in the objections to evidence. |
| 14. There is no evidence of record that any person has ever been misled or confused to the detriment of Plaintiff by any statement made by Kitchen Cube LLC or any other defendant. | Disputed | There is substantial evidence that the public has been misled and confused by Defendants' actions to the detriment of Plaintiff. The cubes produced by Defendants are virtually identical to Plaintiff's original Cube, making them indistinguishable to the average consumer. Defendants' modifications for injection molding resulted in a dangerous product that dispenses up to 17% more volume than indicated, a significant error that can harm newborns and is comparable to a 12-inch ruler measuring 14 inches [Fact 45], [Fact 46], [Fact 47], [Fact 48], [Fact 49], [Fact 57], [Fact 58]. | Plaintiff's objection is based primarily on his own arguments, not any objective evidence of any third party having been misled or confused. He cites no evidence of record for any of the hearsay statements he attributes to third parties, and no such statements were |

10

| | | | |
|---|---|---|---|
| | | Plaintiff spoke to a parent of a sick child who used Defendants' Cube for dispensing medicine. A video demonstrating this error, along with supporting images, is part of the case filings. Additionally, numerous comments on platforms such as Thingiverse, Amazon, and eBay express public anger and frustration at Defendants' theft of Plaintiff's design, and Defendants themselves acknowledged public backlash during discovery, including Facebook posts where users expressed outrage. Defendants' claim that there is "no evidence" is both inaccurate and misleading, as the record demonstrates clear instances of public confusion, harm, and backlash caused by their actions. | disclosed by plaintiff in discovery. |
| 15. There is no evidence of record that Plaintiff has suffered any economic injury as a result of any activity by any Defendant. | Disputed | Plaintiff has suffered economic injury as a direct result of Defendants' unauthorized commercialization of the Cube design, which was provided under a Creative Commons Attribution-NonCommercial-NoDerivatives license. Defendants' actions eliminated Plaintiff's ability to license the design under appropriate terms, depriving Plaintiff of potential revenue streams. By flooding the market with an inferior version of the Cube, which dispenses incorrect | Plaintiff's objection consists solely of own self-serving arguments as to how he might have been harmed were he to have an active commerical interest in selling cubes (which he admitted he has |

11

| | | measurements, Defendants not only damaged Plaintiff's reputation but also saturated the market, further diminishing the value of Plaintiff's original, widely recognized design. The significant popularity of Plaintiff's Cube on Thingiverse, with over 500,000 downloads, has been undermined by Defendants' misappropriation, creating consumer confusion and diluting the value of Plaintiff's creative work. Defendants' assertion that Plaintiff suffered no economic injury is inaccurate and ignores the clear record of lost opportunities, market interference, and reputational harm caused by their conduct. | not undertaken, Ex. at 159); he cites no evidence of any actual economic injury. |
|---|---|---|---|
| 16. Plaintiff has never offered his design or bakercubes for commercial sale. | Disputed | Plaintiff's decision not to offer the Cube design or bakercubes for commercial sale was intentional and aligned with the Creative Commons Attribution-NonCommercial-NoDerivatives license under which the design was distributed. This decision does not negate the economic harm caused by Defendants' unauthorized commercialization, which violated the license terms. Plaintiff's design achieved significant success with over 500,000 downloads and widespread recognition, creating substantial opportunities for licensing, | Plaintiff does not dispute the stated fact. |

12

| | | partnerships, or authorized monetization that were foreclosed by Defendants' market saturation and consumer confusion. Defendants' actions directly interfered with Plaintiff's ability to control if, when, and how the design could be commercially utilized, depriving Plaintiff of potential revenue streams and causing economic injury. Plaintiff's non-commercial distribution does not justify Defendants' infringement or excuse the harm caused by their unauthorized use. | |
| 17. Plaintiff has not ever produced an injection-molded version of the barkercube. Ex. 2 at 31. | Disputed | Exhibit 2 (Deposition Transcript) is Barred: [Fact 52], [Fact 53]. Defendants' statement demonstrates a lack of understanding of the relevant technology. Modern injection-molded models are typically generated automatically from 3D models. Plaintiff produced such 3D models of an injection-molded version of the Cube, which are clearly visible in Defendants' Exhibit 1.1. The colorful cubes depicted to the right of the main green Cube in Exhibit 1.1 represent the injection-molded versions of the Cube. Except for the significant error introduced by Defendants in their version of the Cube, which compromises its accuracy and function, these models are virtually indistinguishable from | Plaintiff does not dispute the stated fact -- he only claims to have generated "models" or "representation" of injection-molded cubes, which are not actual injection-molded cubes. Defendants admit there is little difference in the appearance of Plaintiff's cubes and injection-molded cubes, but it takes time and effort to actually |

13

| | | | | |
|---|---|---|---|---|
| | | | Defendants' injection-molded Cube to an average observer. Defendants' attempt to mischaracterize Plaintiff's production of 3D models as insufficient is misleading and disregards the technological processes involved. | produce such cubes, and that is something Plaintiff has never done. |
| | 18. Plaintiff has not, since 2018, undertaken any efforts to commercialize the bakercube. Ex. 2 at 159. | Disputed | Exhibit 2 (Deposition Transcript) is Barred: [Fact 52], [Fact 53]. Plaintiff has communicated to Defendants on multiple occasions that he is in the process of finalizing a new design of the Cube. Unlike the original Cube, which was created as a visual work of art, the new design is intended as a functional product for commercialization. Defendants' unauthorized actions have destroyed the market for the Cube. The backlash from the 3D printing community against Defendants, combined with the poor quality of Defendants' version of the Cube, which dispenses up to 17% more than indicated [Fact 45], [Fact 46], [Fact 47], [Fact 48], [Fact 49], [Fact 57], [Fact 58], has undermined Plaintiff's ability to commercialize the product. To a casual observer, Defendants' Cube appears identical to Plaintiff's Cube, leading to significant consumer confusion and market harm. | Plaintiff does not dispure the stated fact, which he admitted in his deposition testimony. Ex. 2 at 159. Plaintiff may or may not be "In the process of finalizing a new design .. Intended as a functional product for commercialization," but Defendants' point is he has not actually undertaken any such efforts. Objections to the evidence cited are discussed in the objections to evidence. |

14

| | | | | |
|---|---|---|---|---|
| 19. There is no evidence of record that Tyler Ruble personally engaged in any marketing or sale of measuring cubes; all such activity has been undertaken by him in his capacity as the owner of Kitchen Cube LLC. Ex. 3 at para 3 (Ruble Declaration). | Disputed | Disputed. Defendants' assertion is inaccurate and unsupported. There is substantial evidence that Ruble personally engaged in the marketing and sale of measuring cubes, disregarding the formal separation between himself and Kitchen Cube LLC, thus exposing himself to personal liability under corporate veil-piercing doctrines. Ruble's improper use of Kitchen Cube LLC as his personal bank account, coupled with his failure to adhere to corporate formalities, supports this claim. In response to a DMCA takedown request on Amazon, Ruble identified himself personally as the seller of the cubes [Fact 72]. Whether Ruble's conduct justifies corporate veil piercing is a factual question that must be resolved by a jury. The record, including evidence of his direct, personal involvement, clearly contradicts Defendants' attempt to distance Ruble from the actions of Kitchen Cube LLC. | Plaintiff cites no evidence of record in support of his objections. As discussed below in response to Fact 72, the counter-notice signed by Ruble contains no statement that he sold cubes in his personal capacity. |
| 20. There is no evidence of record that Timothy A. Duffy personally engaged in any marketing or sale of measuring cubes; all such activity has been undertaken by him in his capacity | Disputed | Defendants' assertion is inaccurate and unsupported. There is substantial evidence that Timothy A. Duffy personally engaged in the marketing and sale of measuring cubes, disregarding the formal separation between himself and Altamatic LLC, thus exposing himself to | Plaintiff cites no evidence of record in support of his objections. As discussed below in response to Fact 73, the counter-notice signed by Duffy |

| | | | |
|---|---|---|---|
| as the owner of Altamtic LLC. Ex. 4 at para 3 (Duffy Declaration). | | personal liability under corporate veil-piercing doctrines. Duffy's improper use of Altamatic LLC as his personal bank account and failure to adhere to corporate formalities support this claim. In response to a DMCA takedown request on Amazon, Duffy personally identified himself as the seller of the cubes and responded to the notice in his personal capacity [Fact 73]. Whether Duffy's conduct justifies corporate veil piercing is a factual question that must be resolved by a jury. The record, including evidence of his direct, personal involvement, contradicts Defendants' attempt to distance Duffy from the actions of Altamatic LLC. | contains no statement that he sold cubes in his personal capacity. |
| 21. There is no evidence of record that Randall Toltz personally engaged in any marketing or sale of measuring cubes; all such activity has been undertaken by him in his capacity as one of the owners of Insider Goods LLC. Ex. 5 at para 3 (Toltz Declaration). | Disputed | Defendants' assertion is inaccurate and unsupported. There is substantial evidence that Randall Toltz personally engaged in the marketing and sale of measuring cubes, disregarding the formal separation between himself and Insider Goods LLC, thus exposing himself to personal liability under corporate veil-piercing doctrines. Toltz's improper use of Insider Goods LLC as his personal bank account and failure to adhere to corporate formalities support this claim. In response to a | Plaintiff cites no evidence of record in support of his objections. As discussed below in response to Fact 74, the counter-notice signed by Toltz contains no statement that he sold cubes in his personal capacity. |

16

| | | DMCA takedown request on Amazon, Toltz personally identified himself as the seller of the cubes and responded to the notice in his personal capacity [Fact 74]. Whether Toltz's conduct justifies corporate veil piercing is a factual question that must be resolved by a jury. The record, including evidence of his direct, personal involvement, contradicts Defendants' attempt to distance Toltz from the actions of Insider Goods LLC. | |
|---|---|---|---|
| 22. There is no evidence of record that Dylan Spencer personally engaged in any marketing or sale of measuring cubes; all such activity has been undertaken by him in his capacity as the owner of Nomadic Consulting LLC. Ex. 6 at para 3 (Spencer Declaration). | Disputed | Defendants' assertion is inaccurate and unsupported. There is substantial evidence that Dylan Spencer personally engaged in the marketing and sale of measuring cubes, disregarding the formal separation between himself and Nomadic Consulting LLC, thus exposing himself to personal liability under corporate veil-piercing doctrines. Spencer's improper use of Nomadic Consulting LLC as his personal bank account and failure to adhere to corporate formalities support this claim. In response to a DMCA takedown request on Amazon, Spencer personally identified himself as the seller of the cubes and responded to the notice in his personal capacity [Fact 75]. Whether Spencer's conduct justifies corporate veil piercing is a | Plaintiff cites no evidence of record in support of his objections. As discussed below in response to Fact 75, the counter-notice signed by Spencer contains no statement that he sold cubes in his personal capacity. |

17

| | | factual question that must be resolved by a jury. The record, including evidence of his direct, personal involvement, contradicts Defendants' attempt to distance Spencer from the actions of Nomadic Consulting LLC. | |
|---|---|---|---|
| 23. As a result of "take down" notices issued by Plaintiff to various third parties under the Digital Millenium Copyright Act, Kitchen Cube LLC's sales of measuring cubes were interrupted. Ex. 3 at para 4. | Disputed | Defendants mischaracterize the facts surrounding Plaintiff's issuance of DMCA takedown notices. Plaintiff's takedown notices were filed in good faith, consistent with the Digital Millennium Copyright Act (DMCA), and based on clear evidence that Kitchen Cube LLC was infringing on Plaintiff's Creative Commons Attribution-NonCommercial-NoDerivatives license. Plaintiff's takedown notices were a legitimate enforcement of rights explicitly granted under the Creative Commons license, which prohibits commercial use and derivative works. Any interruption in Kitchen Cube LLC's sales was a direct result of Defendants' unauthorized commercialization of Plaintiff's Cube design, necessitating enforcement action under the DMCA. Plaintiff followed proper procedures under the DMCA and acted in good faith, providing Defendants with notice and an opportunity to file counter-notices, which they | Plaintiff does not dispute the stated fact. |

| | | | |
|---|---|---|---|
| | | exercised. Under 17 U.S.C. § 512(f), good faith takedown notices are protected, and Defendants have failed to present evidence of bad faith or improper conduct by Plaintiff. The disruption of sales was a direct consequence of Defendants' own infringing actions. | |
| 24. As a result of a "take down" notice issued by Plaintiff to Amazon under the Digital Millenium Copyright Act, Altamatic LLC's sales of measuring cubes were interrupted. Ex. 4 at para. 4. | Disputed | Defendants misrepresent the facts regarding Plaintiff's issuance of a DMCA takedown notice to Amazon. Plaintiff filed the takedown notice in good faith under the Digital Millennium Copyright Act (DMCA), based on clear evidence that Altamatic LLC was infringing on Plaintiff's Creative Commons Attribution-NonCommercial-NoDerivatives license. The takedown notice was a legitimate enforcement of Plaintiff's rights, which prohibit commercial use and derivative works without authorization. Any interruption in Altamatic LLC's sales was a direct consequence of Defendants' unauthorized actions and their failure to respect the licensing terms. Plaintiff adhered to all proper procedures under the DMCA, providing Defendants with notice and an opportunity to file a counter-notice, which they did. Under 17 U.S.C. § 512(f), Plaintiff is shielded from liability for good faith takedown | Plaintiff does not dispute the stated fact -- which was obviously the whole point of the take-down notices. |

JOINT APPENDIX OF UNDISPUTED/DISPUTED FACTS AND CONCLUSIONS OF LAW

| | | notices, and Defendants have failed to provide evidence of bad faith or improper conduct. The sales interruption was a result of Defendants' infringement, not Plaintiff's enforcement efforts. | |
|---|---|---|---|
| 25. As a result of a "take down" notices issued by Plaintiff to Amazon under the Digital Millenium Copyright Act, Insider Goods LLC's sales of measuring cubes were interrupted. Ex. 5 at para. 4. | Disputed | Defendants mischaracterize the facts regarding Plaintiff's issuance of DMCA takedown notices to Amazon. Plaintiff submitted the takedown notices in good faith under the Digital Millennium Copyright Act (DMCA), citing clear evidence that Insider Goods LLC was infringing on Plaintiff's Creative Commons Attribution-NonCommercial-NoDerivatives license. The notices were a legitimate enforcement of Plaintiff's rights, which prohibit unauthorized commercial use and derivative works. Any interruption in Insider Goods LLC's sales was a direct result of Defendants' unauthorized actions and disregard for Plaintiff's licensing terms. Plaintiff followed all proper DMCA procedures, providing Defendants with notice and the opportunity to file counter-notices, which they did. Under 17 U.S.C. § 512(f), Plaintiff is protected from liability for good faith takedown notices, and Defendants have presented no evidence of bad faith or improper conduct. The sales | Plaintiff does not dispute the stated fact. |

20

| | | | |
|---|---|---|---|
| | | interruption was caused by Defendants' infringement, not Plaintiff's rightful enforcement of the license. | |
| 26. Plaintiff's DMCA notices were false when issued because they asserted the Counter-Defendants' measuring cubes infringed on a valid copyright when in truth Plaintiff held no copyright, registered or otherwise, in his design. | Disputed | Defendants' assertion is incorrect. Plaintiff acted in good faith on August 6, 2023, when issuing DMCA takedown notices to address Defendants' unauthorized use of Plaintiff's Cube design. At the time, Plaintiff reasonably believed the Cube was a visual work of art protected under copyright law, and this belief was reinforced by Plaintiff's subsequent filing of a copyright application on September 13, 2023. Regardless of the Copyright Office's later determination and the Court's dismissal of the copyright claim, the Creative Commons Attribution-NonCommercial-NoDerivatives license is a valid and enforceable contractual agreement. Defendants' actions, including the unauthorized commercialization and modification of the Cube, violated the terms of this license. Plaintiff's DMCA notices were lawful and consistent with the terms of the Creative Commons license, serving to enforce the rights granted under that agreement. Defendants' attempt to mischaracterize these actions as improper ignores both the enforceability of the license and | Plaintiff does not dispute the stated fact. He had and has no valid copyright, his subjective belief or good faith is not implicated by the stated fact. |

| | | | |
|---|---|---|---|
| | | Plaintiff's genuine reliance on it to protect the Cube design from unauthorized use. | |
| 27. Plaintiff took no steps to restract any of his DCMA notices after receiving either the initial refusal of his copyright application or the rejection of his appeal from the Copyright Office informing him that his design was not copyrightable. | Disputed | Defendants' assertion is inaccurate and mischaracterizes Plaintiff's actions. Plaintiff's DMCA notices were issued in good faith to enforce the terms of the Creative Commons Attribution-NonCommercial-NoDerivatives license, an enforceable contract that remains valid regardless of copyright registration. At the time of issuance, Plaintiff reasonably believed the Cube was a visual work of art protected under copyright law, consistent with 17 U.S.C. § 102(a). The subsequent rejection of Plaintiff's copyright application and appeal does not diminish the enforceability of the Creative Commons license or the legal basis for the DMCA notices, which primarily sought to address Defendants' violations of the license's terms prohibiting unauthorized commercial use and derivative works. Plaintiff had no legal obligation to retract the DMCA notices, as the Creative Commons license was and remains a sufficient basis for enforcing Plaintiff's rights. Defendants have provided no evidence of bad faith or improper conduct, and the rejection of the copyright | Plaintiff does not dispute the stated fact, but merely offers excuses for the implication that he should have withdrawn the notices, which the fact does not purport to address. |

| | | | |
|---|---|---|---|
| | | application does not undermine the legitimate contractual restrictions Defendants violated. | |
| 28. Plaintiff's complaints and the ensuing restrictions imposed on Kitchen Cube LLC's sales have depressed its sales of measuring cubes to this day. Ex. 3 at para. 5. | Disputed | Defendants' assertion is misleading and shifts blame for their own actions onto Plaintiff. Any sales restrictions or decline in sales experienced by Kitchen Cube LLC are a direct result of Defendants' unauthorized actions, not Plaintiff's lawful efforts to enforce his rights. Defendants violated the Creative Commons Attribution-NonCommercial-NoDerivatives license by engaging in unauthorized commercial use and modification of Plaintiff's Cube design, necessitating enforcement actions such as DMCA takedown notices. Consumer dissatisfaction with Defendants' defective Cube—dispensing up to 17% more volume than indicated—has caused significant backlash on platforms like Amazon and Thingiverse, where users expressed frustration with Defendants' unauthorized and inferior derivative. Defendants' market-saturating actions, flooding the market with a defective version virtually indistinguishable from Plaintiff's original design to a casual observer, have harmed both the Cube's reputation and its marketability. Defendants' claim that Plaintiff's | Plaintiff does not dispute the stated fact, but merely offers excuses for the effect of the notices on Kitchen Cube's sales, which the fact does not purport to address. |

| | | enforcement of his rights caused ongoing sales depression is unsupported, as Plaintiff acted in good faith and within the bounds of applicable laws to address clear breaches of the Creative Commons license. [Fact 34], [Fact 35], [Fact 37], [Fact 44], [Fact 45], [Fact 46], [Fact 49], [Fact 56], [Fact 59]. | |
|---|---|---|---|
| 29. Plaintiff's complaints and the ensuing restrictions imposed on Altamatic LLC's sales have depressed its sales of measuring cubes to this day. Ex. 4 at para. 5. | Disputed | Defendants' claim is inaccurate and improperly attributes the decline in Altamatic LLC's sales to Plaintiff's lawful enforcement of the Creative Commons license. Any restrictions or sales impacts experienced by Altamatic LLC resulted directly from Defendants' unauthorized actions, not from Plaintiff's good faith efforts to address those violations. Altamatic LLC violated the Creative Commons Attribution-NonCommercial-NoDerivatives license by commercializing Plaintiff's Cube design without authorization and producing derivative works. Plaintiff's enforcement actions, including DMCA takedown notices, were lawful responses to these breaches. Additionally, consumer backlash against Defendants' defective Cube, which dispenses up to 17% more volume than indicated, has been well-documented through complaints on Amazon and | Plaintiff does not dispute the stated fact, but merely offers excuses for the effect of the notices on Altamatic's sales, which the fact does not purport to address. |

| | | | |
|---|---|---|---|
| | | social media, damaging Altamatic LLC's reputation and contributing to sales declines. Defendants also introduced a product into the market that is virtually indistinguishable from Plaintiff's original design, causing confusion and diluting the Cube's value. Plaintiff's enforcement of the license was conducted in good faith and in accordance with the law. The record shows that Defendants' own breaches and product defects, not Plaintiff's actions, are responsible for any negative sales outcomes. [Fact 34], [Fact 35], [Fact 37], [Fact 44], [Fact 45], [Fact 46], [Fact 49], [Fact 56], [Fact 59]. | |
| 30. Plaintiff's complaints and the ensuing restrictions imposed on Insider Goods LLC's sales have depressed its sales of measuring cubes to this day. Ex. 5 at para. 5. | Disputed | Defendants' assertion inaccurately attributes the decline in Insider Goods LLC's sales to Plaintiff's lawful enforcement of the Creative Commons license. Any restrictions or sales impacts experienced by Insider Goods LLC resulted from Defendants' own unauthorized actions and market conduct, not Plaintiff's efforts to address license violations. Insider Goods LLC breached the Creative Commons Attribution-NonCommercial-NoDerivatives license by commercializing Plaintiff's Cube design without authorization and creating derivative works. Plaintiff's | Plaintiff does not dispute the stated fact, but merely offers excuses for the effect of the notices on Insider Goods's sales, which the fact does not purport to address. |

25

| | | | |
|---|---|---|---|
| 1 | | | DMCA takedown notices were lawful and issued in good faith to enforce these contractual obligations. Defendants' Cube product, which dispenses up to 17% more volume than indicated, caused widespread consumer dissatisfaction and confusion, posing safety risks for precise uses such as dispensing medication. Numerous consumer complaints on Amazon, Thingiverse, and other platforms highlight criticism of Defendants' Cube as an unauthorized, poor-quality derivative of Plaintiff's design. By introducing a product that is virtually indistinguishable from Plaintiff's Cube, Defendants created consumer confusion and market disruption, eroding trust in the design and harming its marketability. Plaintiff acted in good faith when enforcing the license and following proper DMCA procedures. The decline in Insider Goods LLC's sales stems from Defendants' own breaches, product defects, and disregard for contractual and quality standards, not from Plaintiff's enforcement actions. [Fact 34], [Fact 35], [Fact 37], [Fact 44], [Fact 45], [Fact 46], [Fact 49], [Fact 56], [Fact 59]. | |
| 26 | 31. As a result of Plaintiff's DCMA notices, Kitchen Cube LLC has | Disputed | Defendants' claim that Plaintiff's DMCA notices caused $175,000 in damages to Kitchen Cube LLC is | Plaintiff offers no evidence of record to dispute the |

| | | | |
|---|---|---|---|
| incurred damages totaling at least $175,000. Ex. 3 at paras. 6-7. | | unsupported and fails to consider key facts. Plaintiff issued the DMCA takedown notices in good faith under the Creative Commons Attribution-NonCommercial-NoDerivatives license, which prohibits unauthorized commercial use and derivative works. These notices were a lawful and legitimate effort to enforce Plaintiff's rights under the license and comply with DMCA procedures. Any financial losses incurred by Kitchen Cube LLC are directly attributable to Defendants' unauthorized commercialization of Plaintiff's Cube design, violating the license terms. Defendants have not provided concrete evidence linking Plaintiff's DMCA notices to the alleged $175,000 in damages. Instead, their losses likely stem from their actions, including marketing and selling a defective Cube product that dispenses up to 17% more volume than indicated, causing consumer dissatisfaction and market backlash, and generating consumer confusion by introducing a product indistinguishable from Plaintiff's Cube, which eroded trust and reputation. Defendants bear the burden of proving that Plaintiff's actions, not their own violations and defective product, caused the alleged damages, a burden they have | stated fact. He cites no documents or testimony provided by or about Kitchen Cube that raises any good faith dispute as to the stated fact. |

27

| | | failed to meet. Moreover, under 17 U.S.C. § 512(f), good faith DMCA notices are immune from liability, and Defendants have presented no evidence of bad faith or improper intent on Plaintiff's part. Plaintiff's notices were issued based on a legitimate belief that Defendants violated the license terms. [Fact 34], [Fact 35], [Fact 37], [Fact 44], [Fact 45], [Fact 46], [Fact 49], [Fact 56], [Fact 59]. | |
|---|---|---|---|
| 32. As a result of Plaintiff's DCMA notices, Altamatic LLC has incurred damages totaling at least $15,500. Ex. 4 at paras. 6-7. | Disputed | Defendants' claim that Plaintiff's DMCA notices caused $15,500 in damages to Altamatic LLC is unsupported, speculative, and overlooks key facts. Plaintiff issued the DMCA takedown notices in good faith under the Creative Commons Attribution-NonCommercial-NoDerivatives license, which prohibits unauthorized commercial use and derivative works. These notices were a lawful effort to enforce Plaintiff's rights and complied with DMCA procedures. Any damages allegedly incurred by Altamatic LLC were caused by Defendants' unauthorized use of Plaintiff's Cube design, in violation of the license terms. Altamatic LLC's financial losses, if any, are more likely attributable to their defective product design, which dispenses | Plaintiff offers no evidence of record to dispute the stated fact. He cites no documents or testimony provided by or about Altamtic that raises any good faith dispute as to the stated fact. |

28

| | | | |
|---|---|---|---|
| | | up to 17% more volume than indicated, causing consumer dissatisfaction and market backlash, and to the market confusion created by their product, which is virtually indistinguishable from Plaintiff's Cube, eroding consumer trust. Defendants have failed to provide concrete evidence linking Plaintiff's DMCA notices to the alleged $15,500 in damages, relying instead on speculative claims without supporting documentation. Under 17 U.S.C. § 512(f), Plaintiff is protected from liability for DMCA notices filed in good faith, and Defendants have presented no evidence of bad faith or improper intent. Furthermore, Defendants' ability to file counter-notices under the DMCA process demonstrates that Plaintiff's actions complied with the law and were legitimate enforcement measures. [Fact 34], [Fact 35], [Fact 37], [Fact 44], [Fact 45], [Fact 46], [Fact 49], [Fact 56], [Fact 59]. | |
| 33. As a result of Plaintiff's DCMA notices, Insider Goods LLC has incurred damages totaling at least $45,000. Ex. 5 at paras. 6-7. | Disputed | 33. Defendants' claim that Plaintiff's DMCA notices caused $45,000 in damages to Insider Goods LLC is unsupported and speculative. Any alleged damages are the result of Defendants' unauthorized actions, not | Plaintiff offers no evidence of record to dispute the stated fact. He cites no documents or testimony |

| | | Plaintiff's lawful enforcement of the Creative Commons license. Plaintiff issued the DMCA takedown notices in good faith, consistent with the terms of the Creative Commons Attribution-NonCommercial-NoDerivatives license, which prohibits unauthorized commercial use and derivative works. Plaintiff's actions fully complied with the DMCA process and were aimed at enforcing valid contractual rights. Any harm alleged by Insider Goods LLC stems from their unauthorized use of Plaintiff's Cube design, which violated the license, and their defective product, which dispenses up to 17% more volume than indicated, leading to significant consumer dissatisfaction and backlash. Consumer complaints across Amazon, Thingiverse, and social media highlight the market confusion and reputational harm caused by Defendants' unauthorized derivative product. Defendants have failed to provide concrete evidence linking Plaintiff's DMCA notices to the alleged $45,000 in damages, as the decline in sales and reputational harm experienced by Insider Goods LLC are directly attributable to Defendants' unauthorized actions and defective product, not Plaintiff's | provided by or about Insider Goods that raises any good faith dispute as to the stated fact. |

30

| | | enforcement efforts. Furthermore, under 17 U.S.C. § 512(f), Plaintiff is immune from liability for filing takedown notices in good faith, and Defendants have presented no evidence of bad faith or improper intent. Defendants' filing of counter-notices under the DMCA further confirms that Plaintiff followed lawful procedures. [Fact 34], [Fact 35], [Fact 37], [Fact 44], [Fact 45], [Fact 46], [Fact 49], [Fact 56], [Fact 59]. | |

31

| Non-Movants' Undisputed Fact | Status | Opposition | |
|---|---|---|---|
| **[34.]**<br><br>**Plaintiff's input to this motion is filed in protest, as it was submitted after the 11/28/2024 deadline for the last motion hearing, in violation of the Civil Standing Order and Civil Trial Order, Dkt. 69. The brief for this motion was provided 92 days after the L.R. 7-3 meeting, during which span numerous material developments, including significant meetings, intervening Court orders, and changes in case posture, occurred but were never addressed or sufficiently conferred upon as required by procedural rules. Plaintiff reserves the right to amend, correct, or modify this opposition as** | Disputed | Plaintiff's statement is not appropriate for inclusion in this Appendix. The procedural issues related to this motion are being addressed in a separate motion. | |

32

| | | | |
|---|---|---|---|
| necessary, including in response to further developments or clarifications provided by the Court or Defendants. | | | |
| 35. The applicable version of the Creative Commons license in this case is version 4.0, which has been in effect since November 2013. [Ex. 9] | Not disputed | Defendants object, however, to Exhibit 9, as reflected in the objections to evidence. | |
| 36. Plaintiff's Cube design was one of the most downloaded designs worldwide on Thingiverse for 16 months, exceeding 500,000 downloads and gaining significant recognition in the 3D printing community. [Ex. 30] | Disputed in part | Defendants agree the Thingaverse files have been downloaded approximately 500,000 times. No exhibit or other evidence supports the remaining statement. | |
| 37. Plaintiff has never authorized any Defendant to commercially sell or distribute any derivative of the Cube design, | Not disputed | Defendants object, however, to any implication such authorization was required. | |

33

| | | | |
|---|---|---|---|
| consistent with the restrictions of the Creative Commons license. | | | |
| 38. Plaintiff's background is in art and theoretical mathematics. | Not disputed | Defendants object to this statement on the ground it is irrelevant to the issues raised by their motions. | |
| 39. Plaintiff designed the Cube with extreme precision as an art-math project for the 3D printing community, proving the hypothesis that combining multiple volumes sharing common walls within a cube structure was mathematically possible. | Disputed in part | Defendants agree that Plaintiff designed the "bakercube." Plaintiff cites no evidence for the remainder of this fact, and it is inconsistent with the portrayals (and indeed the very name) of the "bakercube" as reflected in the record. Ex. 1.1. | |
| 40. Defendants Kitchen Cube LLC and Ruble downloaded Plaintiff's Cube design, created injection molding molds for a derivative design indistinguishable from the original Cube to a casual observer, and sold over $800,000 worth of derivative | Disputed in part | Defendants agree with the fact except for the assertion as to the volume of Kitchen Cube's sales, for which Plaintiff cites no evidence of record as is inconsistent with Ex. 3 at paras. 6-7. | |

34

| | | | | |
|---|---|---|---|---|
| 1<br>2<br>3<br>4<br>5 | Cubes on multiple platforms, in violation of the Creative Commons license. [Ex. 10; Ex. 12; Ex. 13; Ex. 14] | | | |
| 6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14 | 41. Defendants Altamatic LLC and Timothy Duffy ordered and sold over $50,000 worth of derivative Cubes manufactured in China, in violation of the Creative Commons license. [Ex. 15, p. 4, No. 6; Ex. 17] | Disputed in part | Defendants agree with the fact except for the assertion as to the volume of Altamatic's sales, for which Plaintiff cites no evidence of record as is inconsistent with Ex. 4 at paras. 6-7. | |
| 15<br>16<br>17<br>18<br>19<br>20<br>21<br>22 | 42. Defendants Nomadic LLC and Dylan Spencer ordered and sold over $75,000 worth of derivative Cubes manufactured in China, in violation of the Creative Commons license. [Ex. 18] | Disputed in part | Defendants agree with the fact except for the assertion as to the volume of Nomadic's sales, for which Plaintiff cites no evidence of record as is inconsistent with Ex. 6 at paras. 6-7. | |
| 23<br>24<br>25<br>26<br>27<br>28 | 43. Defendants Insider Goods LLC and Randall Toltz ordered and sold over $135,000 worth of derivative Cubes manufactured in China, in violation | Disputed in part | Defendants agree with the fact except for the assertion as to the volume of Insider Goods's sales, for which Plaintiff cites no evidence of record as is inconsistent with Ex. 5 at paras. 6-7. | |

| | | | |
|---|---|---|---|
| of the Creative Commons license. [Ex. 20] | | | |
| 44. All Defendants violated the Creative Commons license by failing to provide attribution to Plaintiff as the designer of the Cube, as required under the license. | Disputed | This is a conclusion of law, to which no response it required. Defendants agree they did not provide any attribution to Plaintiff, a fact that he does not mention in either of his complaints and for which their no indication Plaintiff has ever required from any user of his files. Ex. 1.1. | |
| 45. Defendants' defective Cubes dispense up to 17% more volume than indicated, posing severe safety risks, particularly when used to measure liquid medicine for newborns. Plaintiff spoke with a parent who confirmed using Defendants' Cube for this purpose. [Ex. 22] | Disputed | The only evidence cited for this claim are photos taken by Plaintiff that purport to show different weights for water in two recepticles, from which no reliable conclusions can be derived and which were not the subject of any expert testimony. Indeed, to the extent they are probative of anything, they actually show the opposite of what Plaintiff claims in that there is a higher water level in the supposedly larger receptacle, as shown by the reflection of the meniscus on the right-hand image. In any event, this exhibit is irrelevant as the issue of the accuracy of the measurements in the various cubes forms no part of any legal claim or defense in the case; nor is it relevant to any issue raised by this motion. | |

| | | | |
|---|---|---|---|
| 46. Defendants' defective Cubes, marketed as scientifically precise, fail to meet basic accuracy standards, undermining the goodwill and trust associated with Plaintiff's original design. | Disputed | Plaintifff cites no evidence of record for this fact other than his own self-serving conclusion. | |
| 47. Plaintiff offered assistance to Defendants to correct the grave redesign error, which Defendants rejected. [Ex. 32] | Disputed in part | Defendants agree that Plaintiff offered them "assistance," which offer was not accepted. Plaintiff cites no evidence of record for any other statement in this fact, which is irrelevant as it forms no part of any legal claim of Plaintiff's, nor it is relevant to any issue raised by this motion. | |
| 48. Defendants Kitchen Cube LLC and Ruble falsely advertised their Cube as having "volumes (+/-) 0.1%," matching the actual average precision of Plaintiff's Cube, while their cubes dispense up to 17% more liquid than indicated. [Ex. 35] | Disputed | Plaintiff's statement mischaracterizes the exhibit (which is itself objectionable), and as unsupported an irrelevant as dicsussed above in response to Facts 45 and 46. | |
| 49. All Defendants falsely advertised | Disputed | Plaintiff cites no evidence of record for this statement. | |

JOINT APPENDIX OF UNDIPSUTED/DISPUTED FACTS AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| their derivative Cubes as original designs, further compounding consumer confusion. | | | |
| 50. The Court found that Plaintiff properly pleaded a cause of action for breach of contract and determined that the Creative Commons license functions as a valid and enforceable contractual agreement independent of copyright registration.  [Ex. 33, p24, lines 19-20; Ex. 34, p24, lines 19-20] | Disputed | This is a conclusion of law, to which no response it required. Whether the Court found Plaintiff's pleading sufficient is not determinative of the issues raised by this motion. | |
| 51. The Court found that the Creative Commons license encompasses "Copyrights and Similar Rights," plausibly including rights beyond copyright that Plaintiff alleges were violated. [Ex. 33, p28, lines 16-19; Ex. 34, p28, lines 16-19] | Disputed | This is a conclusion of law, to which no response it required. Whether the Court found Plaintiff's pleading sufficient is not determinative of the issues raised by this motion. | |

38

| | | | |
|---|---|---|---|
| 52. Defendants failed to produce a certified, corrected version of the August 28, 2024, deposition transcript, despite Plaintiff's timely submission of errata corrections, in violation of FRCP 30(e) and FRCP 37(c)(1), rendering the transcript inadmissible. [Ex. 37; Ex. 38; Ex. 39; Ex. 40] | Disputed | Rule 30(e) does not require the production of a corrected version of the transcript. The transcript, with Plaintiff's errata, are of record. None of the portions of the transcript cited by Defendants were the subject of errata. Plaintiff has no basis on which to dispute the legitimacy of the transcript excerpts cited by Defendants. | |
| 53. Defendants disclosed deposition exhibits after the discovery cutoff of September 4, 2024, on September 12, 2024, in violation of FRCP 37(c)(1), rendering those exhibits inadmissible. [Ex. 41] | Disputed | This statement is illogical and incorrect. Plaintiff's deposition was taken on August 28, 2024, and all exhibits thereto were marked at that time. | |
| 54. On December 12, 2024, Defendants provided a brief for their motion for summary judgment, 92 days after the Local Rule 7-3 meet-and-confer held on September | Disputed | This is a conclusion of law, to which no response it required. The procedural issues related to this motion are addressed elsewhere. | |

JOINT APPENDIX OF UNDIPSUTED/DISPUTED FACTS AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| 11, 2024, and beyond the last day for motion hearings of November 28, 2024, without seeking leave of the Court, in violation of the Civil Trial Order (Dkt. 69). This delay prejudices Plaintiff, as Defendants failed to address significant intervening issues arising during the delay. [Ex. 45] | | | |
| 55. Plaintiff has received no monetary compensation for the unauthorized use of his Cube design by Defendants. | Not disputed | | |
| 56. The unauthorized commercialization of Plaintiff's Cube by Defendants has caused substantial reputational harm and consumer confusion. | Disputed | Plaintiff cites no evidence of record for this statement. | |
| 57. Plaintiff, whose personal history is rooted in a legacy of protecting | Disputed | Plaintiff cites no evidence of record for this statement. In any event, this fact is irrelevant as it forms no part of any legal claim | |

40

| | | | |
|---|---|---|---|
| newborns, experiences continuous and extreme distress knowing that Defendants' actions endanger lives, particularly newborns. | | of Plaintiff's, nor is it relevant to any issue raised by this motion. | |
| 58. Defendants' flawed redesign of the Cube poses risks beyond liquid medicine, as inaccuracies in volume measurement could lead to similar harm in other sensitive applications, such as food preparation or scientific measurements. | Disputed | Plaintiff cites no evidence of record for this statement. Defendants never marketed or sold cubes as medical or scientific devices. In any event, this fact is irrelevant as it forms no part of any legal claim of Plaintiff's, nor is it relevant to any issue raised by this motion. | |
| 59. Defendants' derivative products have saturated the market, reducing opportunities for Plaintiff to monetize or license the Cube. | Disputed | Plaintiff cites no evidence of record for this statement. | |
| 60. Defendants' repeated co-mingling of personal and business funds and failure to observe corporate | Disputed | Plaintiff cites no evidence of record for this statement. | |

| | | | |
|---|---|---|---|
| formalities demonstrate a disregard for the separateness of LLC entities, supporting Plaintiff's claims of individual liability. | | | |
| 61. Duffy failed to disclose his prior sanctions for litigation misconduct, including lying under oath, destroying evidence, and vexatiously prolonging proceedings, in his Pro Hac Vice application in this case. [Ex. 46; Ex. 47; Ex. 48] | Disputed | Duffy had no such obligation. This issue is the subject of a pending motion, and is irrelevant to this motion. | |
| 62. Duffy violated the Protective Order by disclosing years of financial data of other Defendants he represents to an unrelated person and lied about it in sworn statements to this Court. He was sanctioned for lying to the Court in sworn statements in a prior case he omitted from his | Disputed | This issue -- which is actully Plaintiff's failure to return inadvertently produced privileged documents as required by the Protective Order is the subject of a pending motion and irrelevant to this motion. | |

JOINT APPENDIX OF UNDIPSUTED/DISPUTED FACTS AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| Pro Hac Vice application. [Ex. 49] | | | |
| 63. Elliot Chen admitted during the March 29, 2024, meet-and-confer that all Defense responses (six months of responses) were "B.S." (Chen's words). Defendants provided hundreds of pages of non-responsive nonsense, wasting weeks of work by Plaintiff and the Court dealing with the filings of these documents. [Ex. 50] | Disputed | This argumentative assertion requires no further response, and is irrelevant to this motion. | |
| 64. Ruble lied to this Court in his deposition, claiming lack of knowledge about the service of documents, despite emails disclosed by Duffy proving his receipt of those documents. [Dkt. 121-13] | Disputed | Ruble was never deposed. In any event, this fact is irrelevant as it forms no part of any legal claim of Plaintiff's, nor is it relevant to any issue raised by this motion. | |
| 65. Duffy acknowledged that the Cubes were copyrighted. [Ex. 51] | Disputed | The statement that Plaintiff "copyrighted" his design was made in response to Plaintiff's initial assertion he had a copyright. This proved to be | |

| | | | false. Moreover, the statement also indicates the design was not properly copyrightable, but protecable via patent, if at all. See Ex. 54. | |
| --- | --- | --- | --- | --- |
| 66. On June 17, 2024, Duffy provided Plaintiff with 2,889 emails as part of the document production. | Not disputed | In response to Plaintiff's broad discovery requests, Defendants' produced copies of whole email mailboxes for his review. In any event, this fact is irrelevant as it forms no part of any legal claim of Plaintiff's, nor is it relevant to any issue raised by this motion. | |
| 67. On September 3, 2024, Plaintiff provided Defendants with materials marked as exhibits, including all 2,889 emails. | Not disputed | Plaintiff did indeed designate an absurdly large number of documents as "exhibit" for some unknown purpose on September 3, 2024. In any event, this fact is irrelevant as it forms no part of any legal claim of Plaintiff's, nor is it relevant to any issue raised by this motion. | |
| 68. On September 18, 2024, Plaintiff filed motion Dkt. 121, 93 days after receiving 2,889 emails from Defendants and 15 days after providing Defendants with copies of these emails as Plaintiff's exhibits. Plaintiff never received any objections related to these emails from any of the five | Not disputed | Defendants first learned of the inadvertant disclosure via Plaintiff's motion seeking to exploit the inadvertant prodiction. In any event, this fact is irrelevant as it forms no part of any legal claim of Plaintiff's, nor is it relevant to any issue raised by this motion. | |

JOINT APPENDIX OF UNDIPSUTED/DISPUTED FACTS AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| attorneys representing Defendants until after the motion was filed. | | | |
| 69. On September 30, 2024, Plaintiff held a Local Rule 7-3 meeting related to two motions. There were only two available hearing dates before the November 28, 2024, last hearing deadline, both of which were blocked. Plaintiff, in compliance with the Court's Civil Order, withdrew both motions. | Disputed in part | The parties did hold a meet-and-confer as stated. Plaintiff never withdrew any motions, nor was he ever "blocked" from filing any motions. In any event, this fact is irrelevant as it forms no part of any legal claim of Plaintiff's, nor is it relevant to any issue raised by this motion. | |
| 70. On September 11, 2024, Duffy held a Local Rule 7-3 meeting related to his motion for summary judgment. There were only two available hearing dates before the November 28, 2024, last hearing deadline, both of which were blocked. Despite this, Duffy proceeded with the motion for | Disputed in part | The parties held a meet-and-confer as stated. Defendants' filed this motion, and have also filed a motion seeking leave to have it heard notwithstanding the dates in the intiial scheduling order. In any event, this fact is irrelevant as it forms no part of any legal claim of Plaintiff's, nor is it relevant to any issue raised by this motion. | |

45

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | summary judgment in violation of the Court's Civil Order. | | |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 71. Defendants failed to sufficiently meet and confer before bringing this motion, in violation of Local Rule 7-3. The required conference took place on September 11, 2024, yet Defendants delayed providing their motion brief until December 12, 2024, a span of 93 days. During this significant delay, numerous material events occurred that impacted the status and substance of this motion, including but not limited to: Defendants' ex parte communications with the Court, Motion to Disqualify Duffy for serious procedural violations, clawback claims, counsel withdrawal following disclosure of Pable v. Chicago | Disputed in part | The parties held a meet-and-confer as stated. Defendants' filed this motion, and have also filed a motion seeking leave to have it heard notwithstanding the dates in the intiial scheduling order. In any event, this fact is irrelevant as it forms no part of any legal claim of Plaintiff's, nor is it relevant to any issue raised by this motion. | |

| | | | |
|---|---|---|---|
| Transit Authority, Plaintiff's errata for the deposition transcript, Court orders related to motions to dismiss (Dkts. 88 and 87), the December 9, 2024 Local Rule 7-3 meeting addressing trial filings, witness lists, discovery issues, the Court's December 9, 2024 response agreeing with Plaintiff's position that Defendants must seek leave of Court to file a motion for summary judgment. Defendants' failure to engage in a meaningful and timely meet-and-confer process undermines the procedural requirements of Local Rule 7-3 and prejudices Plaintiff by ignoring significant intervening events and developments. | | | |
| 72. Tyler Ruble personal involvement. In response to a | Disputed | The counter-notice signed by Ruble contains no statement that he sold cubes in his personal capacity. | |

| | | | | |
|---|---|---|---|---|
| DMCA takedown request on Amazon, Tyler Ruble personally submitted a counter-notification identifying himself as the seller of the cubes and certifying, under penalty of perjury, that he was acting in a personal capacity. This contradicts his claim that all marketing and sales activities were undertaken solely through his LLC. [Ex. 28] | | | | |
| 73. Duffy personal involvement. In response to a DMCA takedown request on Amazon, Duffy personally submitted a counter-notification identifying himself as the seller of the cubes and certifying, under penalty of perjury, that he was acting in a personal capacity. This contradicts his claim that all marketing and sales | Disputed | The counter-notice signed by Duffy contains no statement that he sold cubes in his personal capacity. | | |

| | | | |
|---|---|---|---|
| activities were undertaken solely through his LLC. [Ex. 25] | | | |
| 74. Toltz personal involvement. In response to a DMCA takedown request on Amazon, Randall Toltz personally submitted a counter-notification identifying himself as the seller of the cubes and certifying, under penalty of perjury, that he was acting in a personal capacity. This contradicts his claim that all marketing and sales activities were undertaken solely through Insider Goods LLC. [Ex. 27] | Disputed | The counter-notice signed by Toltz contains no statement that he sold cubes in his personal capacity. | |
| 75. Spencer personal involvement. In response to a DMCA takedown request on Amazon, Dylan Spencer personally submitted a counter-notification | Disputed | The counter-notice signed by Spencer contains no statement that he sold cubes in his personal capacity. | |

| | | | |
|---|---|---|---|
| identifying himself as the seller of the cubes and certifying, under penalty of perjury, that he was acting in a personal capacity. This contradicts his claim that all marketing and sales activities were undertaken solely through Nomadic LLC. [Ex. 26] | | | |
| Fact 76: Ignorance of the Creative Commons license terms is not a defense to breach of contract. Defendants' unauthorized commercial use, creation, or acquisition of derivative works of Plaintiff's Cube design, whether made by Defendants or purchased by them without knowledge of the original license, constitute violations of the license's terms, including restrictions on commercial use, | Disputed | This is a conclusion of law, to which no response it required. Privity of contract between the parties remains an issue, as Plaintiff cannot explain how the license applies to persons who see or use the design but not his original files, but this fact is irrelevant, as this is not an issue raised in this motion. | |

JOINT APPENDIX OF UNDIPSUTED/DISPUTED FACTS AND CONCLUSIONS OF LAW

| | | | |
|---|---|---|---|
| derivatives, and lack of attribution. The Creative Commons license is publicly available and governs any use of the work, making its terms binding on all users, including Defendants. [Ex. 9] | | | |

JOINT APPENDIX OF UNDIPSUTED/DISPUTED FACTS AND CONCLUSIONS OF LAW

| Movants' Conclusions of Law | Relevant Facts |
|---|---|
| Plaintiff's design of the barkercube is not copyrightable under the Copyright Act. | 5, 6, 7, 9, 10 |
| Any of plaintiff's intellectual property rights in the design of the bakercube that fall within the scope of copyright law are preempted by the Copyright Act. | 5, 6, 7, 9, 10 |
| Plaintiff's claim for damages from the Defendants for breach of the Creative Commons license of his intellectual property rights in the design of the bakercube is preempted by the Copyright Act. | 3, 4, 5, 6, 7, 9, 10 |
| Plaintiff's claims should be dismissed for his failure to both disclose to the Court and produce to Defendants in response to discovery requests the highly relevant and dispositive fact that the U.S. Copyright Office had determined his design of the bakercube was not copyrightable. | 8, 11, 12, 13 |
| Defendants' marketing and sale of their measuring cubes has worked no injury to any commerical interest of Plaintiff recoverable under the Lanham Act. | 14, 15, 16, 17, 18 |
| The evidence of record does not show that any statement by Defendants has actually deceived or has had the tendancy to deceive any substantial segment of any audience for any commerical interests of Plaintiff. | 14, 15, 16, 17, 18 |
| The evidence of record does not show any injury to Plaintiff as a result of any false or misleading statement by any Defendant that resulted in any diversion of sales from | 14, 15, 16, 17, 18 |

52

| | | |
|---|---|---|
| 1 2 3 | Plaintiff to any Defendant or the loss of any goodwill associatd with any product of Plaintiff's. | |
| 4 5 6 7 8 | The evidence of record does not show any marketing or sale of measuring cubes by Tyler Ruble in any personal capacity that would support a claim for breach of any license of Plaintiff's design or the Lanham Act. | 19 |
| 9 10 11 12 | The evidence of record does not show any marketing or sale of measuring cubes by Timothy A. Duffy in any personal capacity that would support a claim for breach of any license of Plaintiff's design. | 20 |
| 13 14 15 16 | The evidence of record does not show any marketing or sale of measuring cubes by Randall Toltz in any personal capacity that would support a claim for breach of any license of Plaintiff's design. | 21 |
| 17 18 19 20 | The evidence of record does not show any marketing or sale of measuring cubes by Dylan Spencer in any personal capacity that would support a claim for breach of any license of Plaintiff's design. | 22 |
| 21 22 | Plaintif's DCMA notices were issued and maintained in violation of 17 U.S.C. § 512(f), | 6, 9, 26, 27 |
| 23 24 25 26 | Plaintiff is liable to Counter-Plaintiffs under 17 U.S.C. § 512(f) for the damages they suffered as a result of Plaintiff's improper DCMA notice. | 23, 24, 25, 28, 29, 30, 31, 32, 33 |
| 27 28 | | |

JOINT APPENDIX OF UNDISPUTED/DISPUTED FACTS AND CONCLUSIONS OF LAW

| Non-Movant's Conclusions of Law | Relevant Facts |
|---|---|
| Plaintiff's Cube design is governed by the Creative Commons Attribution-NonCommercial-NoDerivatives 4.0 license, which constitutes a valid and enforceable contractual agreement. Defendants violated this license by engaging in unauthorized commercial use and derivative works of Plaintiff's design. | 34, 35, 37, 40, 44, 50, 51, 76 |
| Plaintiff's Claims Are Not Preempted by the Copyright Act. The Creative Commons license establishes rights independent of copyright, encompassing enforceable contractual terms such as restrictions on commercial use and derivatives. These rights survive even if the Cube is deemed a "useful article" under copyright law. | 50, 51, 76 |
| Plaintiff Has Substantial Evidence of Breach and Resulting Harm. Plaintiff has demonstrated that Defendants violated the Creative Commons license by commercially exploiting the Cube design and falsely advertising it as their own. This caused reputational harm, market dilution, and consumer confusion, which are recoverable under both contract law and the Lanham Act. | 44, 45, 46, 48, 49, 56, 59, 76 |
| Defendants' Marketing and Sales Activity Caused Harm to Plaintiff. Defendants' actions saturated the market with an inferior derivative product, depriving Plaintiff of the opportunity to license or monetize the Cube under fair terms and conditions. Consumer backlash further eroded the goodwill associated with Plaintiff's design. | 44, 45, 46, 48, 56, 59, 76 |

JOINT APPENDIX OF UNDISPUTED/DISPUTED FACTS AND CONCLUSIONS OF LAW

| | | |
|---|---|---|
| Defendants Misrepresented the Source and Quality of the Cube. Defendants falsely advertised their derivative Cube as original and scientifically precise, despite defects resulting in up to 17% over-measurement. These misrepresentations created consumer confusion and undermined Plaintiff's reputation. | 44, 45, 46, 48, 49 |
| Individual Defendants are Personally Liable. Individual Defendants engaged directly in marketing and selling infringing products, disregarding corporate separateness. Personal actions, such as submitting counter-notifications under penalty of perjury, establish their liability. | 72, 73, 74, 75 |
| Plaintiff's DMCA Notices Were Issued in Good Faith. Plaintiff's DMCA takedown notices were lawful enforcement actions under the Creative Commons license. They were issued in good faith based on a reasonable belief that Defendants' actions violated the license. The notices are protected under 17 U.S.C. § 512(f). | 34, 35, 37, 44, 48, 49, 56 |
| Defendants' Counterclaims Lack Merit. Defendants failed to demonstrate that Plaintiff's DMCA notices caused the alleged damages. Any decline in sales stems from Defendants' unauthorized actions, defective product design, and market saturation, not Plaintiff's lawful enforcement efforts. | 34, 35, 37, 44, 45, 46, 49, 56, 59 |
| Defendants Violated Procedural Rules. Defendants' motion for summary judgment was filed untimely and without leave of Court, violating the Civil | 54, 71 |

JOINT APPENDIX OF UNDISPUTED/DISPUTED FACTS AND CONCLUSIONS OF LAW

| | |
|---|---|
| Standing Order and Civil Trial Order. Defendants also failed to meet and confer in good faith as required by Local Rule 7-3, prejudicing Plaintiff. | |
| Plaintiff's Claims Survive Summary Judgment. Plaintiff has established genuine disputes of material fact regarding Defendants' breach of contract, false advertising, and individual liability. These claims must proceed to trial for resolution by a jury. | 34, 35, 37, 40, 44, 45, 46, 48, 49, 50, 56, 72, 73, 74, 75 |

56

1  DATED: January 2, 2025          LAW OFFICE OF TIMOTHY A. DUFFY, P.C.

2

3                                   By:    _/s/ Timothy A. Duffy_____

4                                          Timothy A. Duffy (*pro hac vice*)
                                           tduffy@tduffylaw.com
5                                          Law Office of Timothy A. Duffy, P.C.
6                                          725 W Orchard Cir
                                           Lake Forest, IL 60045
7                                          Tel: (847) 530-4920
8                                          Fax: (224) 521-6001

9                                          Troy Krich (CA Bar No. 262566)
10                                         troy@tomgallagherlaw.com
                                           Gallagher Krich, APC
11                                         3033 Fifth Ave, Suite 222
12                                         San Diego, CA 92103
                                           Tel: (858) 926-5797
13                                         Fax: (858) 435-4369

14

15                                         *Counsel for Defendants/Counter-Plaintiffs*
                                           *Kitchen Cube LLC, Altamatic LLC, and*
16                                         *Insider Goods LLC, and Defendants*
                                           *Timothy A. Duffy, Tyler Ruble, Randall*
17                                         *Toltz, and Dylan Spencer*

18

19

20

21

22

23

24

25

26

27

28

JOINT APPENDIX OF UNDIPSUTED/DISPUTED FACTS AND CONCLUSIONS OF LAW