Tomas Leszczynski
8941 Atlanta Ave #104
Huntington Beach, CA 92646
914-255-2414
thingiversecube@gmail.com

# *1-6202CNM*

## Appeal Regarding the Bakercube Measuring Cube

## Contents

1.   Introduction ................................................................................................................ 3

2.   Artistic Credentials ..................................................................................................... 3

3.   Conceptual Foundation ............................................................................................... 4

4.   The Cube .................................................................................................................... 5

5.   Unlawful Commercialization and Public Perception ..................................................... 7

6.   Comparison of Art vs. Commercial Product ................................................................. 7

7.   Commercial Value and Popularity as Indicators of Artistic Merit ............................... 10

8.   Legal Argument for Copyrightability .......................................................................... 11

Exhibits .......................................................................................................................... 18

## 1. Introduction

I am hereby submitting an appeal regarding the decision of the Copyright Office, as detailed in the enclosed letter, which declined my copyright application for the Bakercube Measuring Cube, henceforth referred to as the "Cube." In my initial application, I classified the Cube as a visual work of art.

In this appeal, I aim to present background facts that highlight the Cube's artistic nature. Subsequently, I will address the specific concerns and reasons for rejection as outlined in the Copyright Office's letter. This response will include an in-depth explanation of the Cube's artistic value and its conceptual foundation, as well as the delineation of its artistic features from its functional elements in alignment with the guidelines of 17 U.S.C. § 101.

## 2. Artistic Credentials

**Formal Training**: I hold a Summa Cum Laude MFA degree from Academy of Fine Arts in Warsaw, Poland, attesting to my strong foundation in formal artistic training.

**Exhibitions and Collections**: My art has been exhibited internationally, with shows in France, Poland, and the USA, and my works are held in private collections in these countries.

**Mathematics and Programming**: I studied theoretical mathematics and programming at the University of Warsaw, Poland, disciplines that profoundly influence my artistic endeavors.

**Fusion of Art and Mathematics**: My artistic practice involves a unique fusion of art and mathematics, leading to the creation of innovative conceptual pieces, like the Cube.

**Samples of my work:**

**Formal traditional training**: Exhibits 1, 2, 3.
Feature classical realistic painting.

**Fusion of art and math curves**: Exhibits 4, 5, 6, 7.
Oil paintings on canvases bent according to math equations.

**Fusion of math and sculpture**: Exhibits 8, 9, 10
Sculptures in metal driven by stock exchange data.

**Fusion of math and 3D Prints**: Exhibits 11, 12, 13.
Math driven sculptures, such as the wobbly sphericon, which uses geometrical forms and mathematical formulas to produce a sculpture with unique physical behaviors. Nesting turtles, which are based on surface tessellations of repeated shapes. The Cube, the mathematical puzzle of nesting structures.

**The Cube**: Exhibits 14, 15.
As originally submitted to the Copyright Office

**Sierpinski Piramid**: Exhibits 16.
The Sierpinski Pyramid, a renowned mathematical structure, is among the numerous mathematical objects that influenced the creation of my Cube. This intricate fractal, the Sierpinski Tetrahedron, exemplifies the complexity and beauty inherent in mathematical forms. Sierpinski attended the same university as I did. This underscores the Cube's deep-rooted ties to blend of math and art activities.

**My other artwork**: I created over 10,000 art pieces based on Turing patterns, fractals, topology equations, etc. All blends of art and math like the Cube.

## 3. Conceptual Foundation

At the heart of my artistic expression is the intersection of art and mathematics. This fusion transcends mere stylistic choice, forming the bedrock of my creative process and shaping the conception and execution of my works.

My creations embody an integration of mathematical structure with a purely visual approach. This synthesis arises from a profound appreciation for the inherent beauty and order in mathematical concepts, which I adeptly translate into visual art forms. The precision and logic intrinsic to mathematics not only complement but often provide a striking contrast to the fluid and subjective nature of art.

4

The design of the Cube is notably influenced by Dadaism, an art movement celebrated for its ability to transform ordinary objects into stimulating artistic expressions. In the Cube, this influence materializes through the repurposing of everyday items, not for their intended utility but as components of a complex visual puzzle. This method aligns with Dadaism's focus on abstract interpretation rather than practical functionality.

Additionally, the work of Claes Oldenburg, renowned for his transformation of mundane objects into sculptures, echoes in the Cube's design. Oldenburg's approach of reimagining ordinary measuring containers into a puzzle-like structure resonates deeply with the Cube's composition, where the emphasis is placed on artistic expression over functional utility. Much like Oldenburg's creations, the Cube elevates everyday objects beyond their utilitarian roles, morphing them into extraordinary forms of art.

The deliberate fusion of art and mathematics in my work is deeply ingrained in my artistic identity. It's through this unique lens that I approach my creations, aiming to produce works that are not just visually striking but also intellectually engaging. In the Cube, the utilitarian functions are entirely incidental and secondary, further emphasizing the primary focus on artistic value.

## 4. The Cube

My enthusiasm for 3D printing stems from its potential as an ideal medium for artistic expression. This innovative technology has enabled me to create intricate 3D sculptures that blend my artistic background with my programming skills, culminating in the creation of the Cube.

**Design and Artistic Influence:**

The Cube's design is profoundly influenced by Dadaism, an art movement celebrated for transforming mundane objects into thought-provoking artistic expressions. In the Cube, this influence materializes through the unconventional use of everyday items, assembled not for their typical utility but as components of a complex visual puzzle. This aligns with Dadaism's emphasis on abstract interpretation over practical utility.

5

Echoing Claes Oldenburg's transformative approach to ordinary objects into art, the Cube reimagines standard measuring containers into a structure that accentuates artistic expression over functional utility.

**Artistic Features and Intent:**

The Cube's defining characteristic is its artistic visual quality, deliberately crafted to be the primary focus of its design.

**Visual Spectacle:**

The interplay of shapes and forms within the Cube is designed to create a visual spectacle. Its unique composition invites contemplation and interpretation, much like a sculptural piece displayed in an art gallery.

**Deliberate Artistic Composition:**

The Cube's configuration is a thoughtfully crafted amalgamation of various containers, transcending mere functionality and driven by a visual artistic concept.

**Intentional Violation of Usability Rules:**

The Cube's design intentionally disregards conventional usability, underscoring its identity as an art object prioritizing aesthetic experience over practicality. Some of the containers, specifically the smallest ones, are practically unusable because of their nesting structure.

**Distribution, Popularity, and Copyright Compliance:**

The Cube (cube_ver3.STL) was shared on Thingiverse on January 3, 2018, under a Creative Commons, Non-Commercial, No Derivatives license. This facilitated its replication using 3D printers by enthusiasts globally at no cost. Crucially, I produced only one original Cube in my studio, adhering to the copyright limitations of producing no more than 200 units. The subsequent 500,000 downloads from Thingiverse, created independently by others, do not constitute a violation of the 200 units limit as stipulated in the WIPO Copyright Treaty and U.S. Copyright Law.

The Cube rapidly gained worldwide acclaim within the 3D printing community, becoming the most downloaded object for over a year. Its

artistic appeal was further amplified by features in major YouTube reviews, predominantly highlighting its artistic value rather than its functionality.

## 5. Unlawful Commercialization and Public Perception

In violation of the Cube's Creative Commons licensing terms, the .STL file was illicitly used to mass-produce and sell replicas, made in China, and marketed in the US as a "useful article." This unauthorized production serves as a case study of two divergent perceptions: individuals who 3D printed the Cube at home viewed it as a math-inspired visual art object, whereas those who purchased the commercial version, produced by a party infringing on my design, expected a functional, utilitarian product. This marked difference in reception underscores the Cube's inherent nature as an art object, not a utilitarian one, and highlights the misinterpretation of its utility when commercially marketed.

## 6. Comparison of Art vs. Commercial Product

The unauthorized production of the Cube presents a unique case study with feedback from two distinct groups. The first group, consisting of individuals who 3D printed the Cube at home, appreciated it as a visual object with mathematical origins. The second group includes those who purchased the commercial version, manufactured unlawfully, expecting a functional, utilitarian product. This stark contrast in reception underscores the Cube's true nature as an art object and highlights the misinterpretation of its utility when marketed commercially.

**User Comments:**
**Acceptance of the Cube as a Visual Art Piece**

Source #1: Thingiverse.com Comments
https://www.thingiverse.com/thing:2676324/comments

The comments from the original Thingiverse page provide insight into how the Cube is perceived as a visual art piece. Notably, the filaments available at

that time were not food safe, and the 3D prints were porous, making the Cube impractical for measuring liquids.

@reyoko: "Hi!  This is such a great design."

@iambyrdman: "Such a cool design […] it looks great"

@Fuller1969: "It looks amazing and is a great design visually. It just isn't very practical"

@dav88: "Absolutely great!  Love this... I never did well in Mathematics but I can see the logic here."

@Laughlyn: "I really like the design. Just finished printing one and it looks great."

@Peterthinks: "I love this. Its so cool and inovative!!!"

@ScottRider: "This is such a clever design! Thanks for sharing the files! :)"

These comments collectively demonstrate the Cube's reception as an artistic object, with users specifically praising its design, visual appeal, and innovative concept. The recurring theme across these comments is the appreciation of the Cube's artistic value rather than its practical utility, which aligns with the Cube's intended function as a piece of visual art.


**User Comments: Source #2**
**YouTube Video Featuring the Stolen Cube**

https://www.youtube.com/watch?v=-YsYFQvY9Os&ab_channel=Freakin%27Reviews


The following comments from the YouTube video featuring the unauthorized commercial version of the Cube underscore its impracticality when perceived as a "useful article":

@justinwhite2725: "Looks like it was made by a math genius with Asperger's. What's the use of the teaspoon/tablespoon if you can't scoop out of a container."

My Response: I like this comment because it precisely describes my creative process. The cube is a purely mathematical conceptual sculpture designed by a person afflicted slightly with that syndrome who is interested purely in visual representation of very complicated math structures describing the containers without any regard to the final product usability, which, apparently, is truly bad.

@AdelardRen: "Unless it can be pulled apart, it's definitely unwieldy. I'd hate having to use that for baking."

@bluluckyduckie: "It's more a conversation piece than actually functional."

My comment: This succinctly captures the Cube's essence as a visual artwork.

@ajpal: "Designed by someone good at math but not cooking. The design is terrible for its intended purpose."

@sarahdoanpeace3623: "As an avid cook, I'd avoid this. It looks cumbersome, ineffective, and pretty useless."

@ThatSoddingGamer: "Even if it separated into parts, it wouldn't be convenient."

@joshuaewalker: "It looks neat but is impractical."

@great-grandmakirk8828: "Pretty useless. Easier to use measuring spoons and one measuring cup."

@williamjackson8782: "A gadget for a fancy modern house where people don't actually cook."

@badbirdkc: "Clever design but wildly impractical."

These comments from the YouTube video, where the Cube was marketed as a functional item, highlight its impracticality and inefficiency for such use. This contrast with the Thingiverse comments, where the Cube was appreciated for its artistic and conceptual value, powerfully illustrates the Cube's true nature as a piece of art, not a utilitarian object.

In its unique situation, the Cube was perceived in two distinct ways: as a sculpture for replication by 3D printing enthusiasts, and mistakenly as a utilitarian tool by the party who unlawfully replicated my design.

**Communication with the Infringing Party**

In my communication with the infringing party responsible for the commercial version, they reported a poor reception and high return rate, confirming the critical comments seen on YouTube. Users expressed dissatisfaction with the Cube's functionality, leading to significant returns and financial impact on the company: "Most people find the gadget awkward and not very useful as the return rate is high."

This feedback reinforces the notion that the Cube, when marketed based on claims of utility, failed to meet expectations. It further underscores the Cube's true nature as an artistic and conceptual piece, with functionality being a distant afterthought.

## 7. Commercial Value and Popularity as Indicators of Artistic Merit

In understanding the Cube's nature as an art object versus a utilitarian tool, it is instructive to consider its commercial value and popularity:

**Commercial Pricing Comparison:** The Cube, when offered for sale by the infringing party, is priced at $25 per unit, significantly higher than the standard set of measuring cups, which is commonly available for around $7. This price difference suggests an 'art premium' for the Cube. The Cube's higher price point, despite its limited functionality compared to fully usable standard measuring cups, indicates that consumers recognize and are willing to pay for its artistic value rather than its utility.

**Popularity on Thingiverse:** The Cube's reception on Thingiverse further underscores its artistic appeal. It has been downloaded 500,000 times, a number vastly exceeding the downloads of standard sets of measuring cups, which have less than 500 downloads (www.thingiverse.com/thing:5198421). This disparity in download numbers on a platform predominantly used by 3D printing enthusiasts highlights that the Cube is sought after for its artistic and aesthetic qualities, rather than its practical utility as a measuring tool.

**Artistic Value vs. Functional Utility:** The overwhelming popularity of the Cube, combined with its higher market price, demonstrates that its primary

appeal lies in its artistic design. This is in stark contrast to the utilitarian nature of standard measuring cups. The Cube's popularity on Thingiverse and its pricing in the commercial market both suggest that it is perceived and valued primarily as an art object.

**Conclusion**

The Cube's commercial pricing and its extraordinary popularity on Thingiverse, compared to standard measuring cups, serve as strong indicators of its primary function as a work of art. This supports the argument that the Cube should be considered a 'pictorial, graphic, and sculptural work' under copyright law, eligible for protection due to its separable and independently valuable artistic features.

## 8. Legal Argument for Copyrightability

I will now turn to addressing the specific concerns and points of contention outlined in the rejection letter from the Copyright Office:

**Copyright Office: Registration for this work, "Bakercube Measuring Cube," must be refused because it is a useful article that does not contain any separable, copyrightable authorship needed to sustain a claim to copyright.**

**Response:**

In response to the decision to refuse registration of the Cube on the grounds that it is a "useful article" lacking separable, copyrightable authorship, I respectfully submit the following points for reconsideration:

**Separability of Artistic Features**: The Cube's design elements, including its geometric configurations and the specific combination of containers, are not dictated by its function as a measuring tool but are rather manifestations of artistic creativity. These elements are separable from the Cube's functional aspects and can be appreciated independently for their artistic merit.

**Separability Test**: The artistic elements of the cube can be identified separately from its utilitarian function. The cube's design can exist independently as an object of artistic expression, without losing its artistic integrity, even if its functional aspect is disregarded.

For example, if the cube is constructed from materials that render it impractical for actual measuring purposes, with a typical 3D print filament which is not food safe, the cube cannot be used to measure food ingredients. The absolute majority or even all 3D print filaments used at the time of introduction of the cube to Thingiverse were not food safe. The cube was the sculpture created for a very specific audience: 3D print enthusiasts printing complicated math-based 3D structures.

Printing the Cube at a certain scale, for example, 80%, because of a 3D printer size limitation. The Cube retains all its artistic features making it completely unusable as a "utility." Users of smaller 3D printers, especially SLA resin printers, report printing the Cube at those scales without any regard for utility purely as the art piece to be displayed on the table.

In Mazer v. Stein, 347 U.S. 201 (1954), the Supreme Court ruled that an artistic lamp base could be copyrightable even if it also had a utilitarian function as a lamp. This decision established the principle that an artistic element within a useful article could be separately copyrighted as long as it can exist independently of the article's utilitarian aspects. Similarly, the Cube's artistic aspects, such as its geometric nesting design, can be separated from its utilitarian function as a measuring tool, making it eligible for copyright protection as a pictorial, graphic, or sculptural work.

Using the Mazer case, the Court reaffirmed the principle that "[i]f a design would have been copyrightable as a standalone pictorial, graphic, or sculptural work [PGS], it is copyrightable if created first as part of a useful article."

In applying this principle to the Cube's design, its geometric shapes, the arrangement of containers, and overall aesthetic, we see the artistic merit independent of its functionality as a measuring tool. The Cube can be appreciated as an art piece regardless of whether it can actually measure

quantities, thereby fulfilling the separability requirement as interpreted in "Mazer v. Stein."

In Kieselstein-Cord v. Accessories by Pearl, Inc., 632 F. Supp. 743 (S.D.N.Y. 1984), the court ruled that jewelry designs created by Kieselstein-Cord were eligible for copyright protection as sculptural works, even though they had utilitarian aspects as belt buckles. This case highlights the potential for copyright protection of artistic elements in functional objects, which aligns with the argument that the Cube's artistic features can be separated from its utilitarian function as a measuring tool, supporting its classification as a sculptural work rather than a useful article.

In the case of Star Athletica v. Varsity Brands, the Supreme Court established a test for determining the copyrightability of useful articles with decorative elements. The test involves separating the artistic or decorative features from the utilitarian aspects. Applying this to the Cube, its artistic elements, such as its unique geometric configuration and visual appeal, can be separated from its utilitarian function as a measuring tool. This separation supports the argument that the Cube is eligible for copyright protection as a "pictorial, graphic, and sculptural work" rather than being classified solely as a useful article.

The artistic element in the Cube that is separable from its utilitarian function is its unique geometric configuration and visual design. The Cube's intricate arrangement of containers and the interplay of shapes and forms are primarily aesthetic and serve an artistic purpose rather than a practical measuring function. This separable artistic aspect, which is not essential to its utilitarian function, makes it eligible for copyright protection as a "pictorial, graphic, and sculptural work" under copyright law.

Consequently, since the Cube's intrinsic function is to serve as a work of art, not as a practical measuring tool, it should be classified as a "pictorial, graphic, and sculptural work" rather than a "useful article" under 17 U.S.C. § 101.

**The Copyright Office:**

**The Copyright law protects pictorial, graphic, or sculptural works. 17 U.S.C. § 102(a)(5). The design of a useful article is considered a pictorial, graphic, or sculptural work "only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."**

**Response:**

In accordance with the stipulations of 17 U.S.C. § 102(a)(5), I assert that the Cube meets the criteria for protection under copyright law as a pictorial, graphic, or sculptural work. The Cube's design embodies characteristics that are both separable from and capable of existing independently of its utilitarian aspects:

**Sculptural Features:** The Cube's design includes unique geometric arrangements and a visually stimulating interplay of shapes. These aspects are sculptural in nature, offering aesthetic and visual experiences that are independent of the Cube's function as a measuring tool.

**Sculptural Characteristics:** The Cube, in its three-dimensional form, presents sculptural qualities. Its configuration, an artistic arrangement of various containers, transcends a mere functional structure and stands as a work of sculptural art.

**Separability of Artistic Features:** The Cube's design, characterized by its unique arrangement of containers, demonstrates the separability of its artistic elements from its functional role. For instance, the design and placement of the smallest containers prioritize artistic expression over practicality, often rendering them impractical for measuring and dispensing. These design choices inadvertently compromise the Cube's utility, necessitating additional utensils for accurate measurement and covering them with hands to prevent spillage from adjacent containers to be included with the dose.

The Cube's primary identity as a mathematically inspired art sculpture is evident, with its utilitarian aspects emerging more as a byproduct of its artistic design rather than intentional functionality. This is further reinforced by user feedback highlighting the Cube's limited practical use, affirming its conception as an artistic piece rather than a functional tool.

**Independent Existence:** The Cube's design can exist independently as an object of artistic expression. Even if stripped of its measuring function, the Cube retains its artistic integrity, evidenced by its reception and appreciation within the 3D printing communities where its utility was dramatically limited by porous print, not capable to hold liquid, or type of a filament, not designed to be food safe. It retains its artistic integrity when scaled down, when all utility features disappear.

**Influence from Art Movements:** Drawing inspiration from movements like Dadaism and the works of Claes Oldenburg, the Cube's design integrates artistic concepts that are independent of its utility. This aligns the Cube with the traditions of conceptual and modern art.

In conclusion, the Cube aligns with the provisions of 17 U.S.C. § 102(a)(5), as its design incorporates and is characterized by sculptural features that are separable and independent from its utilitarian aspects. Therefore, it merits consideration for copyright protection as a work of art.

**Conceptual and Aesthetic Appeal:** The Cube's design draws inspiration from art movements like Dadaism and artists like Claes Oldenburg, emphasizing abstract interpretation and artistic transformation over practical utility. This aligns the Cube more with sculptural artworks meant to be appreciated for their artistic value.

**Limited Functionality as Evidence of Artistry:** Feedback from users who interacted with both the original artistic version and the commercial version highlight the Cube's limited practical utility. This lack of functionality is a deliberate choice, underscoring the Cube's nature as an artistic object rather than a utilitarian one.

**Copyright Office:**
**17 U.S.C. § 101 (definition of "pictorial, graphic, and sculptural works"). The copyright statute defines "useful article" as "…an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information."**

**Response:**

The artistic aspect of the Cube, its appearance, the interplay of shapes creating a specific puzzle like structure, is not intrinsic to its function as a measuring tool. These aspects are primarily about portraying a certain appearance, which aligns more with artistic expression.

In light of the definition provided in 17 U.S.C. § 101, I contend that the Cube extends beyond the realm of a "useful article" as it embodies significant artistic elements that are not subservient to its utilitarian function:

**Beyond Intrinsic Utility:** While the Cube may possess a utilitarian function as a measuring tool, its design and conception are primarily focused on artistic expression. The Cube's aesthetic elements — its geometric shapes, the arrangement of containers, and the overall visual impact — are not mere byproducts of its function but are central to its design.

**Artistic Expression Over Utility:** The Cube's design was inspired by art movements such as Dadaism and artists like Claes Oldenburg, who emphasized art over utility. In the Cube, everyday objects are transformed into a complex and intriguing visual puzzle, emphasizing artistic expression over practical utility.

**Separability of Artistic Features:** The artistic elements of the Cube can be identified separately from, and exist independently of, its function as a measuring tool. These elements, including its unique configuration and visual appeal, qualify it as a work of art.

**User Reception and Interpretation:** The reception of the Cube by the 3D printing community and the commentary surrounding its design focus on its artistic and conceptual merits rather than its practicality. This perception by

16

the intended audience further distinguishes the Cube from a mere "useful article."

**Commercial Failure as a Utility Object**: The commercial version of the Cube, which was marketed as a utilitarian object, faced a significant backlash due to its impracticality, leading to financial losses for the producing company. This outcome underscores that the Cube's primary value lies in its artistic nature, not in its utility.

In summary, the Cube transcends the definition of a "useful article" as outlined in 17 U.S.C. § 101. Its design, characterized by artistic and expressive features, is distinguishable and independent from any utilitarian aspects it may possess, thereby qualifying it for copyright protection as a "pictorial, graphic, and sculptural work."

In conclusion, I respectfully request your reconsideration of the decision regarding my Bakercube Measuring Cube. I believe the evidence and arguments presented herein compellingly demonstrate its eligibility for copyright protection under the criteria established by law. Your allowance of the copyright to my creation would be a recognition of its artistic value and the effort invested in its conceptualization and design.

Sincerely yours,

Tomas Leszczynski
Dated: December 18, 2023

17

# Exhibit 1



# Exhibit 2



# Exhibit 3



# Exhibit 4



# Exhibit 5



# Exhibit 6



# Exhibit 7



# Exhibit 8



# Exhibit 9



# Exhibit 10



# Exhibit 11



# Exhibit 12



# Exhibit 13



# Exhibit 14



# Exhibit 15



# Exhibit 16





**United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov

November 20, 2023

Tomas Leszczynski
8941 Atlanta Ave #104
Huntington Beach, CA 92646

Correspondence ID:    1-62O2CNM

RE:     Bakercube Measuring Cube

Dear Tomas Leszczynski:

Registration for this work, "Bakercube Measuring Cube," must be refused because it is a useful article that does not contain any separable, copyrightable authorship needed to sustain a claim to copyright.

The Copyright law protects pictorial, graphic, or sculptural works. 17 U.S.C. § 102(a)(5). The design of a useful article is considered a pictorial, graphic, or sculptural work "only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. § 101 (definition of "pictorial, graphic, and sculptural works").  The copyright statute defines "useful article" as "…an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101 (definition of "useful article"). Any article "that is normally a part of a useful article is considered a useful article." 17 U.S.C. § 101 (definition of "useful article").

We examined your work, concluded that it is a useful article, and determined that it does not contain any separable design element that contains sufficient copyrightable authorship to support a registration. Consequently, we cannot register your copyright claim.

This letter is for your information only; no response is necessary.

Sincerely,

Paul Covey
Registration Specialist
Office of Registration Policy and Practice
U.S. Copyright Office

Enclosures:
  Reply Sheet



**United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington DC 20559-6000 · www.copyright.gov

# *1-6202CNM*

# Use this sheet <u>if</u> you request reconsideration

## How to request reconsideration:

- Send your written explanation *of why the claim should be registered or why it was* improperly refused.
- Be sure to include the Correspondence ID Number (listed under the bar code above) on the first page of your Request.
- Indicate whether you are requesting a "First Reconsideration" or "Second Reconsideration."
- **Submit your request ONLINE:** We strongly recommend sending all requests for reconsideration via email following these steps:

  **EMAIL YOUR REQUEST (BUT NOT THE REQUIRED FEE) to:**
  reconsideration@copyright.gov.
  - o The subject line should say "First Reconsideration" or "Second Reconsideration"
  - o Once your email request is received, you will be contacted with instructions on how to submit the required fee.
  - o Failure to send your request for reconsideration to the above email address will result in a delayed response.

  **IMPORTANT NOTE**: Your request and the required fee must be received no later than three months after a refusal is issued.

- **Alternatively, you may submit your request VIA MAIL**:

  - o **IMPORTANT NOTE**: Your request must be postmarked (via the U.S. Postal Service) or dispatched (via commercial carrier, courier, or messenger) no later than three months after a refusal is issued.
  - o Enclose the required fee.
  - o Address your request to**:**

    **FIRST RECONSIDERATION *or* SECOND RECONSIDERATION**
    **U.S. Copyright Office**
    **MCA Division**
    **P.O. Box 71380**
    **Washington, DC 20024-1380**

Tomas Leszczynski                                    - 3 -                                    1-62O2CNM

**First Request for Reconsideration ($350.00 per application):** The Registration Program Office considers the first request. If it upholds the refusal, you may submit a second request.

**Second Request for Reconsideration ($700.00 per application):** The Copyright Office Review Board considers the second request. The Board consists of the Register of Copyrights and the General Counsel (or their respective designees), and a third member appointed by the Register. The Board's decision constitutes final agency action.

**Notification of decision**: The Copyright Office will send all notifications of its decisions by email to the email address provided in the record and/or in the request for reconsideration. If no email address is provided, the Office will send its decision via mail.

**RECONSIDERATION FEES:**

**First Request**          $350 per application

**Second Request**       $700 per application

READ MORE:

- U.S. Copyright Office Administrative Appeals:
  https://copyright.gov/comp3/chap1700/ch1700-administrative-appeals.pdf

- U.S. Copyright Office Fees:
  https://copyright.gov/circs/circ04.pdf

- Copyright Basics:
  https://copyright.gov/circs/circ01.pdf

- Copyright Registration:
  https://copyright.gov/circs/circ02.pdf