1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14

TOMAS LESZCZYNSKI,

                Plaintiff,

    v.

Case No.:  8:23-cv-01698-MEMF-ADS

**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT [ECF NO. 141]**

15
16
17
18

KITCHEN CUBE LLC; TIMOTHY A. DUFFY; ALTAMATIC LLC, INSIDER GOODS LLC; RANDALL TOLTZ; TYLER RUBLE; and DYLAN SPENCER,

                Defendants.

19
20
21
22

KITCHEN CUBE LLC; ALTAMATIC LLC; and INSIDER GOODS LLC,

                Counterclaimants,

    v.

23
24
25
26

TOMAS LESZCZYNSKI,

                Counter-Defendant.

27
28

Before the Court is a Motion for Summary Judgment filed by Defendants and Counterclaimants Kitchen Cube LLC, Altamatic LLC, and Insider Goods LLC, along with Defendants Timothy A. Duffy, Randall Toltz, Tyler Ruble, and Dylan Spencer. *See* ECF No. 141. For the reasons stated herein, the Court hereby GRANTS IN PART the Motion for Summary Judgment.

## I.    Summary of Order for Pro Se Plaintiff Tomas Leszczynski

Defendants and Counterclaimants brought this Motion, and requested that the Court (1) dismiss all claims against them, and (2) grant them summary judgment on their Counterclaims against you, which would result in them winning on that claim without trial.

In this Order, the Court found that: (1) your claim for breach of contract may proceed against the corporate Defendants, but not the individual Defendants, (2) your claim for a Lanham Act violation fails based on the evidence in the record, and (3) Counterclaimants are not entitled to win on their Counterclaim at this stage. The Court also considered whether you should be granted summary judgment on the Counterclaim, but determined that the evidence could be interpreted such that either you or Defendants should win that claim, and so will not grant you summary judgment.

The case will next proceed to trial (unless you all agree to settle) with only one of your claims remaining—your claim for breach of contract (against the corporate Defendants only)—and with Defendants' counterclaim regarding the DMCA notices.

## II.    Background

### A.    Factual Background

Plaintiff and Counterclaim Defendant Tomas Leszczynski ("Leszczynski") alleges that he is the creator of the Bakercube Measuring Cube (the "Cube"), which combines various measuring volumes into a single cubical structure. Leszczynski alleges that he posted the 3D print files for the Cube online, and that the various Defendants[1]—some of whom are corporate entities, and some of

---

[1] Defendants are: Kitchen Cube LLC ("Kitchen Cube"), Timothy A. Duffy ("Duffy"), Altamatic LLC ("Altamatic"), Insider Goods LLC ("Insider Goods"), Tyler Ruble ("Ruble") Randall Toltz ("Toltz"), and Dylan Spencer ("Spencer"). *See* ECF No. 94.

1  whom are individuals who allegedly control those entities—downloaded the 3D print files and used

2  the files to produce their own versions of the Cube, which they then sold for profit.

3      Kitchen Cube, Altamatic, and Insider Goods bring counterclaims alleging that Leszczynski

4  issued take-down notices to Amazon as to their products, and that these take-down notices included

5  material misrepresentations.

6      **B.  Procedural History**

7      Leszczynski filed suit in this Court on September 13, 2023. *See* ECF No. 1. Defendants filed

8  a Motion to Dismiss, which the Court granted in part on April 17, 2024. *See* ECF No. 88.

9  Leszczynski filed a First Amended Complaint ("FAC") on June 7, 2024. *See* ECF No. 94. The FAC

10  asserts the following causes of action against all Defendants: (1) copyright infringement under 17

11  U.S.C. § 501;6 (2) violation of Creative Commons license terms; and (3) false advertising and

12  misrepresentation under 15 U.S.C. § 1125(a). *See id.* Defendants answered the FAC on February 4,

13  2025. *See* ECF No. 159.

14      On May 24, 2024, Kitchen Cube, Altamatic, and Insider Goods filed their Counterclaims

15  against Leszczynski. *See* ECF No. 92. The Counterclaims assert one cause of action in the

16  Counterclaims against Leszczynski: improper Digital Millenium Copyright Act take-down notices in

17  violation of 17 U.S.C. § 512(f). *See id.* Leszczynski answered the Counterclaims on June 13, 2024.

18  *See* ECF No. 95.

19      The parties jointly filed the instant Motion for Summary Judgment ("MSJ") on January 2,

20  2025.[2] *See* ECF No. 141. The parties filed a Joint Appendix of Undisputed and Disputed Facts and

21  Conclusions of Law ("AUF"), various exhibits alongside their MSJ, and a Joint Appendix of

22  Objections. *See* ECF Nos. 141-1–141-65. On January 6, 2025, Leszczynski filed an Evidentiary

23  Objection as to certain exhibits. *See* ECF No. 142. Defendants responded to the Evidentiary

24

25  _____

26  [2] Leszczynski argues that the MSJ was untimely, because at the time it was filed, the scheduling order did not permit an MSJ to be heard on the date it was noticed for. *See, e.g.*, ECF No. 141 at 6. The Court has since

27  amended the scheduling order to allow a later hearing on this MSJ, and so this argument is no longer relevant. *See* ECF No. 158 (Order continuing various case deadlines, in large part because Defendants sought a timely

28  hearing date but the Court had no hearings available). The Court will not deny the MSJ on the basis of timeliness.

1  Objection on January 6, 2025. *See* ECF No. 144. Leszczynski filed an additional declaration and

2  additional exhibits relate to his Evidentiary Objection on February 6, 2025. *See* ECF No. 160.[3]

3       The Court held a hearing on the MSJ on February 13, 2025. In advance of the hearing, the

4  Court shared a Tentative Order with the parties via email. After receiving the Tentative Order, the

5  parties made several additional filings. Defendants filed a Notice of Supplemental Authority,

6  pointing to *Doe 1 v. GitHub, Inc.*, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024). *See* ECF No. 161.

7  Leszczynski filed an Opposition to the Notice of Supplemental Authority. *See* ECF No. 162.

8  Leszczynski then filed two declarations with additional evidence attached. *See* ECF Nos. 163, 164.

9  Shortly after the hearing, Leszczynski filed an additional declaration with further evidence. *See* ECF

10  No. 165.

11       After the hearing, the Court issued an Order stating that the parties would be permitted to

12  submit additional briefing and evidence on certain identified issues and ordering them to meet and

13  confer on a briefing schedule. *See* ECF No. 167. The Court also informed the parties that it was

14  considering granting summary judgment to Leszczynski as to the Counterclaim pursuant to Rule

15  56(f), and allowed them to respond. *See id.*

16       The Court set a briefing schedule on March 3, 2025. *See* ECF No. 172. Pursuant to that

17  briefing schedule, Defendants filed supplemental briefs on three issues (alter ego liability,

18  Leszczynski's deposition testimony, and whether the Court should grant summary judgment to

19  Leszczynski on the counterclaim pursuant to Rule 56(f)) on March 3, 2025. *See* ECF Nos. 173, 174,

20  175. Leszczynski filed a supplemental brief regarding his deposition testimony on March 3, 2025,

21  and filed a reply in support of summary judgment as to the counterclaim on March 9, 2025. *See* ECF

22  Nos. 176, 178.

---

[3] Leszczynski's objection is that the exhibits were purportedly "tampered with," in that certain images were degraded and are now difficult to read. *See* ECF No. 142; *see also* ECF No. 160. Defendants explain that this occurred during the filing process and was not done in bad faith. *See* ECF No. 144. Defendants have no objection to the Court relying on the higher-quality images of certain exhibits that Leszczynski submitted. *See id.* The Court OVERRULES Leszczynski's Evidentiary Objection, but the extent that the Court relied upon the exhibits in question in preparing this Order, the Court used the higher-quality images Leszczynski provided. The Court does not find that the record shows any violation of the Court's Standing Order requiring sanctions or any other action by the Court.

### III.    Findings of Fact[4]

Leszczynski designed the Cube. *See* AUF ¶ 1. Leszczynski posted the 3D print files regarding the Cube on Thingiverse, a website where users may download 3D print files and print objects. *See id.* ¶ 2. The files were downloaded more than 500,000 times. *See id.* ¶ 36. When Leszczynski posted the 3D print files on Thingiverse, he did so with a "Creative Commons Attribution-Non Commercial-No Derivatives License (the "CC License"). *See id.* ¶ 3. Through this CC License, Leszczynski sought to restrict how the 3D print files could be used. *See id.* Leszczynski never authorized any Defendant to commercially sell the Cube or any derivative thereof. *See id.* ¶ 37.

Leszczynski has never offered the Cube for sale. *See id.* ¶ 17. In 2018, Leszczynski was working on a project to commercialize the Cube. *See* ECF No. 141-12 at 17 (Leszczynski Depo. Tr. 159:13–23). He then abandoned that project, and since 2018, he has not made any efforts to commercialize the Cube. *See id.*; *see also* AUF ¶ 18. Leszczynski testified in deposition that he intends to commercialize the Cube in the future. *See* ECF No. 141-12 at 17–18 (Leszczynski Depo. Tr. 159:25–160:09).

Kitchen Cube and Ruble[5] downloaded the 3D print files and sold a derivative design. *See id.* ¶ 40. Altamatic and Duffy ordered derivative Cubes and sold them. *See id.* ¶ 41. Spencer and non-

---

[4] The facts set forth below are taken from the parties' Statement of AUF and the evidence cited therein. *See* ECF No. 141-2. To the extent that any statements of fact are omitted, the Court concludes they are not material to the disposition of this Motion. To the extent that any of the facts set below were allegedly disputed by the opposing party, the Court concludes that no actual dispute exists or that the adopted language resolves the dispute. In making these findings, the Court considered the parties' various objections. *See* ECF No. 141-65. The Court did not find any objected-to evidence essential to its findings except where explicitly stated herein, and need not reach any objections.

[5] Leszczynski alleges in his FAC that Ruble is the "sole owner" of Kitchen Cube and used it as his alter ego. *See* ECF No. 94 at p. 11. Similarly, Leszczynski alleged in the FAC that Duffy is the "sole owner" of Altamatic and used it as his alter ego (*see id.* at p. 12), and alleged that Toltz used Insider goods as his alter ego (*see id.* at p. 13), and that Spencer used non-party Nomadic Consulting LLC as his alter ego (*see id.* at p. 14). These alleged facts are not explicitly stated in the AUF, and Leszczynski pointed to no evidence that would support them. *See* ECF No. 141-2. However, in their portion of the MSJ, Defendants appear to concede that the individual Defendants own their respective corporate entities as alleged. *See* ECF No. 141-1 at 8–9 ("There is no evidence of record that any of the individual defendants personally engaged in any marketing or sale of measuring cubes; all such activity has been undertaken by them in their capacity as owners of their respective entities.").

party[6] Nomadic Consulting LLC ("Nomadic") also ordered and sold derivative Cubes and sold them. *See id.* ¶ 42. Insider Goods and Randall also ordered and sold derivative Cubes and sold them. *See id.* ¶ 43. Leszczynski received no compensation from any of these sales. *See id.* ¶ 55.

Leszczynski issued take-down notices regarding Defendants' sales of the Cube. *See, e.g.,* ECF No. 141-29. In the take-down notices, Leszczynski stated "I am the creator and copyright owner of the cube design." *See id.* As a result of the take-down notices Leszczynski issued, Kitchen Cube, Altamatic, and Insider Goods suffered disruptions to their sales on various platforms including Amazon. *See id.* ¶¶ 23–25. Kitchen Cube's, Altamatic's, and Insider Goods's sales dropped due to the take-down notices and continue to be lower now as a result of the take-down notices. *See id.* ¶¶ 28–30.

Defendants responded to Leszczynski's take-down notice by filing a counter notification pursuant to DMCA Section 512(g). *See* 17 U.S.C. § 512(g)(3). Ruble submitted a response on behalf of Kitchen Cube, which Ruble digitally signed, stating that "I have a good faith belief that the material identified in the Notice of Infringement was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled. I therefore request that the material be replaced and/or no longer disabled." *See id.* ¶ 72; *see also* ECF No. 141-38. Duffy submitted a response on behalf of Altamatic, and digitally signed it, with identical language to that quoted above. *See* AUF ¶ 73; *see also* ECF No. 141-35. Toltz submitted a response on behalf of Insider Goods, and digitally signed it, also with identical language to that quoted above. *See* AUF ¶ 74; *see also* ECF No. 141-37. Spencer submitted a response on behalf of Nomadic, and digitally signed it, also with identical language. *See* AUF ¶ 75; *see also* ECF No. 141-36.

On September 5, 2023, Leszczynski filed an application for a copyright regarding his design of the Cube.[7] *See id.* ¶ 5. On November 20, 2023, the Copyright Office denied Leszczynski's

---

[6] Leszczynski describes Nomadic as a "Defendant[]." *See* AUF ¶ 42. Nomadic is not a defendant in this action. *See* ECF No. 94.

[7] Leszczynski objected that the evidence underlying his dealings with the Copyright Office is irrelevant because his claim for copyright infringement (included in his initial complaint) was dismissed at the motion to dismiss stage. *See* ECF No. 141-65. The Court OVERRULES this objection, finding this evidence potentially

application for a copyright, on the grounds that it was a "useful article." *See id.* ¶ 6. On December 18, 2023, Leszczynski submitted a request for reconsideration of his application. *See id.* ¶ 7. On April 7, 2024, the Copyright Office again denied the application, on essentially the same grounds. *See id.* ¶ 9. Leszczynski did not update or retract his take-down notices after the Copyright Office's decisions. *See id.* ¶ 27.

In an email sent to Defendants prior to filing suit, Leszczynski stated to Defendants that "I have consulted with IP attorneys who specialize in this area, and they have affirmed the validity of my claims." *See* ECF No. 141-64 at 3. Later, in his deposition on September 12, 2024, Leszczynski testified that the conversation with an attorney prior to filing suit was "rough" and brief, as described in further detail in the discussion below. *See* 176-2 at 1–2.

## IV.    Applicable Law

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the moving party must either: (1) produce evidence negating an essential element of the nonmoving

---

relevant to the counterclaims, which focus on whether Leszczynski submitted the take-down notices, and wrote that he was a copyright owner, in bad faith.

1    party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving

2    party's case. *Id.*

3          Where a moving party fails to carry its initial burden of production, the nonmoving party has

4    no obligation to produce anything, even if the nonmoving party would have the ultimate burden of

5    persuasion at trial. *Id.* at 1102–03. In such cases, the nonmoving party may defeat the motion for

6    summary judgment without producing anything. *Id.* at 1103. However, if a moving party carries its

7    burden of production, the burden shifts to the nonmoving party to produce evidence showing a

8    genuine dispute of material fact for trial. *Anderson*, 477 U.S. at 248–49. Under these circumstances,

9    the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the

10   depositions, answers to interrogatories, and admissions on file, designate specific facts showing that

11   there is no genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal

12   quotation marks omitted). If the nonmoving party fails to produce enough evidence to create a

13   genuine issue of material fact, the motion for summary judgment shall be granted. *Id.* at 322 ("Rule

14   56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

15   against a party who fails to make a showing sufficient to establish the existence of an element

16   essential to that party's case, and on which that party will bear the burden of proof at trial.").

17         A party cannot create a genuine issue of material fact simply by making assertions in its

18   legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235,

19   1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for

20   the dispute. *See id.* "If a party fails to properly support an assertion of fact or fails to properly

21   address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R.

22   Civ. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only

23   required to consider evidence set forth in the moving and opposing papers and the portions of the

24   record cited therein. *Id.* 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir.

25   2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be

26   insufficient; there must be evidence on which the jury could reasonably find for [the opposing

27   party]." *Anderson*, 477 U.S. at 252.   To carry its ultimate burden of persuasion on the motion, the

28

moving party must demonstrate that there is no genuine issue of material fact for trial. *Nissan Fire*, 210 F.3d at 1102; *Celotex Corp.*, 477 U.S. at 323.

## V.    Discussion

Defendants and Counterclaimants made several different arguments, and the Court will address each in turn. For the reasons stated below, the Court GRANTS IN PART the Motion for Summary Judgment—the Court finds that: (1) Defendants and Counterclaimants have not shown that Leszczynski's claim for breach of contract is preempted by the Copyright Act; (2) Leszczynski's Lanham Act claim fails because he has not shown any harm; (3) Leszczynski has shown that any individual Defendant (Duffy, Toltz, Ruble, or Spencer) can be liable on any claim; and (4) Counterclaimants have not shown that they are entitled to summary judgment on their Counterclaim. The Court also considered whether to grant summary judgment to Leszczynski on the Counterclaim but determined that this would not be appropriate.

### A. Leszczynski's Claim for Breach of Contract (First Cause of Action) is Not Preempted by the Copyright Act.

Defendants first argue that Leszczynski's claim for breach of contract is preempted by the Copyright Act. *See* ECF No. 141-1 at 20–23. This argument fails.

Certain types of state law claims are preempted by the federal Copyright Act. The Copyright Act contains the following preemption provision:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). As the Ninth Circuit has explained, this provision "seeks to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works, so long as the rights fall within the scope of the Federal copyright law." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017). There is a two-part test to determine

whether a claim is preempted: first, a court must decide "whether the subject matter of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103," and second, a court must determine "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *See id.* Applying this, the Ninth Circuit held that right of publicity claims are preempted in some, but not all, circumstances. *See id.* Claims that seek to challenge a copyright holder's right to distribute an image are preempted. *See id.* But claims that challenge nonconsensual use of a likeness in merchandise or advertising are not. *See id.*

Breach of contract claims are generally not preempted. "If a state law claim includes an extra element that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005). Applying this, "[m]ost courts have held that the Copyright Act does not preempt the enforcement of contractual rights." *See id.* Although the Ninth Circuit has not, to this Court's knowledge, issued a blanket rule that breach of contract claims are *never* preempted, the Ninth Circuit has touched on the issue and suggested they generally are not preempted. The Ninth Circuit has twice held that claims for tortious interference with a contract are not preempted. *See id.*; *see also MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 957 (9th Cir. 2010). In so holding, the Court favorably cited precedent from other circuits holding that claims for breach of contract are not preempted. *See Altera*, 424 F.3d at 1089 (collecting cases holding that breach of contract claims are not preempted, and stating that "We find the logic of these cases persuasive here."). As the Ninth Circuit explained in *MDY Industries*, the *Altera* holding "relied on the Seventh Circuit's analysis in [*ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996)], which explained that because contractual rights are not equivalent to the exclusive rights of copyright, the Copyright Act's preemption clause usually does not affect private contracts." *MDY Indus*, 629 F.3d at 957. The Ninth Circuit went on to note that the "Fourth, Fifth, and Eighth Circuits have also held that the Copyright Act does not preempt a party's enforcement of its contractual rights," and reiterated that tortious interference is not prohibited. *See id.*

1    Here, Leszczynski's first cause of action is for breach of contract. This claim as pleaded here

2    includes additional elements that a copyright claim would not—namely, the existence of a contract

3    and a breach of some term thereof. These additional elements significantly change the right asserted

4    and make it distinct from a copyright claim. *See Altera*, 424 F.3d at 1089. Here, Leszczynski alleges

5    that the contract prohibited any "commercial use" or "derivative use" of his 3D print files. *See* ECF

6    No. 94 at 7. In context, the Court's understanding is that Leszczynski seeks to prohibit any

7    downloader of his 3D print files from using the files to create a physical object, and then selling that

8    physical object for profit (commercial use) or using the files to create derivative items (derivative

9    use). But importantly Leszczynski does not seek to prohibit anyone from reproducing the text of his

10   3D print files, from distributing the files, from publicly displaying the files, or other possible uses of

11   the files. As the Ninth Circuit explained in *MDY Industries*, a claim is preempted it the claim seeks

12   to assert "rights equivalent to the exclusive rights of copyright under 17 U.S.C. § 106 (*i.e.*,

13   reproduction, distribution, public display, public performance, and creation of derivative works)."

14   *See MDY Indus.*, 629 F.3d at 957. The rights Leszczynski asserts are far narrower than those that a

15   copyright would grant. Although there is some overlap (particularly as to derivative works),

16   Leszczynski does not assert most of the rights that are at the core of a copyright—namely

17   reproduction of an idea in fixed media or public displays and performances thereof. He asserts a

18   significantly different right by seeking to control certain uses of physical objects that can only be

19   created using the code in the 3D print files. *See Altera*, 424 F.3d at 1089 (finding that a claim was

20   not preempted when it focused on the *use* of software rather than reproduction of software). Further,

21   he does not claim an exclusive right to be asserted against the world, and instead claims a right that

22   can only be asserted against people who (purportedly) entered into a contract with him by

23   downloading the file. *See ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996) (explaining

24   that breach of contract claims are generally not preempted because "A copyright is a right against the

25   world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so

26   contracts do not create 'exclusive rights.'"). For these reasons, and also based on the Ninth Circuit's

27   guidance regarding tortious interference with contract claims and the Ninth Circuit's favorable

28

1  citation to precedent that breach of contract is not preempted, the Court finds that this claim is not

2  preempted here. *See id.*

3      Defendants failed to provide authority showing otherwise. Defendants argue that *MDY*

4  *Industries* does not stand for a blanket rule that a party "can sue on a contract without regard to

5  copyright law." *See* ECF No. 141-1 at 22–23. While this statement is correct, Defendants have not

6  grappled with the ways in which *MDY Industries* suggests that this claim is preempted. Defendants

7  cite to a different portion of *MDY Industries*, which held that "for a licensee's violation of a contract

8  to constitute copyright infringement, there must be a nexus between the condition and the licensor's

9  exclusive rights of copyright." *See MDY Indus*, 629 F.3d at 941. But Defendants do not address the

10  other portion of the case that discuss preemption. *See* ECF No. 141-1 at 26–27. Similarly,

11  Defendants argue that *Altera* does not "nullif[y] the doctrine of preemption in this case." *See id.* at

12  27. This too is correct but not persuasive—but although the doctrine is not "nullified," *Altera*

13  strongly suggests that it has no application here for the reasons described above. Defendants have

14  not shown that it applies. Defendants also cite, in their Notice of Supplemental Authority,[8] *Doe 1 v.*

15  *Github. See* ECF No. 161. This case is non-binding and would be distinguishable even if it were

16  binding. The *Doe 1* court distinguished from *Alerta* by noting that *Doe 1* concerned "unauthorized

17  reproduction of their code," while *Altera* concerned "unauthorized use of the software's end-

18  product." *See Doe 1*, 2024 WL 235217 at *7. Here, it is the opposite—like in *Altera*, this case

19  essentially concerns unauthorized use of software's end product (commercial sales of Cubes created

20  using the 3D print files), not unauthorized copying of code. *Doe 1* is thus inapposite.

21      The Court thus finds that the breach of contract claim is not preempted. The MSJ is DENIED

22  as to this claim.[9]

23

24  _____

25  [8] The Court notes that *Doe 1* was decided before Defendants filed their Motion, and so it appears improper that it was brought to the Court's attention as supplemental authority rather than as part of the initial Motion.

26  [9] In the hearing, Defendants raised several other arguments. Defendants argued that the breach of contract claim should fail for lack of damages. They further argued that that only Kitchen Cube downloaded the file

27  (and that the other Defendants purchased cubes from Kitchen Cube), and thus only Kitchen Cube can be said to have entered into a contract by agreeing to the license, and so only Kitchen Cube can be liable for breach of

28

### B. **Leszczynski's Claim for Violation of the Lanham Act (Second Cause of Action) Fails for Lack of Any Evidence of Harm.**

Defendants argue that Leszczynski's claim for a violation of the Lanham Act fails because he has not shown any cognizable harm under the Lanham Act. The Court finds that the claim fails for this reason.

A Lanham Act plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). This rule derived from a case addressing proximate causation and the limits on what sorts of plaintiffs may sue under the Lanham Act, in which the Supreme Court explained that "[f]or example, while a competitor who is forced out of business by a defendant's false advertising generally will be able to sue for its losses, the same is not true of the competitor's landlord, its electric company, and other commercial parties affected downstream by the harm." *See id.* at 134. Leszczynski has provided no authority or argument that this rule does not apply here, and instead argues that he can show economic or reputational injury. *See* ECF No. 141-1 at 28–30.

There is no evidence in the record showing that Leszczynski suffered any harm. First, because he has never sought to sell the cube, he cannot show that Defendants' purportedly[10] false advertising cost him sales. *See* AUF ¶¶ 17, 18. Although Leszczynski testified in deposition that he intends to commercialize the Cube in the future, this appears to be speculative, and Leszczynski has provided no evidence that he has suffered any harm to his speculative future sales. *See* ECF No. 141-12 at 17–18 (Leszczynski Depo. Tr. 159:25–160:09). Even if the Court were to assume that Leszczynski's plans to sell the Cube are not speculative, there is no basis for a finding that Defendants have caused any harm to those sales—Leszczynski could still sell Cubes or could sell the

---

contract. Finally, Defendants made detailed arguments as to the meaning of the license in question, which resembled the arguments discussed at the motion to dismiss stage. *See* ECF No. 87 at 28–29. These arguments were not raised in the briefing and so the Court will not consider them.

[10] The Court need not reach the issue of whether Leszczynski has shown that Defendants made false statements, and makes no finding on it. The claim fails either way for lack of harm.

1  business that designed the Cube,[11] and he has not shown that these ventures would be any less

2  profitable. Second, Leszczynski has not shown any reputational harm. Leszczynski has neither

3  shown that he ever had any reputation to harm nor that such a reputation suffered any harm.

4  Although Leszczynski argues that he had goodwill associated with the Cube, the only cited evidence

5  in support is an image of a page on Thingiverse that does not directly show that the Cube was

6  popular or that Leszczynski had a reputation as a result. *See* AUF ¶ 36 (pointing to Ex. 30, ECF No.

7  141-40). Defendants concede that the Cube was downloaded 500,000 times, but there is no evidence

8  on whether that number of downloads would lead to a reputation or how strong it would be. *See*

9  AUF ¶ 36. Further, there is no evidence from which a jury could conclude that to the extent

10  Leszczynski has or had a reputation, this reputation had monetary value, particularly given that

11  Leszczynski has not sought to use the reputation to sell the Cube (or any other products) based on

12  the evidence in the record. Beyond that, Leszczynski has not shown any harm to his reputation.

13  Leszczynski asserts that his goodwill has been diluted, but there is no evidence that the public views

14  Leszczynski in any lesser light as a result of Defendants' conduct. *See* ECF No. 141-1 at 29. At the

15  hearing, Leszczynski argued that when he attends meetings for 3D printing enthusiasts, they are

16  often unaware that he was the original designer of the Cube and believe that Kitchen Cube was. This

17  evidence is not in the record. But even if it were, that would not show reputational harm. The fact

18  that people do not know who Leszczynski is (in other words, that he does not have a reputation) does

19  not prove that his reputation has been harmed. It might be different if he had previously been well

20  regarded and then Defendants caused people to lose respect for him. *See Lexmark*, 572 U.S. at 123,

21  137 (finding that plaintiff's allegation that it suffered injury to its business reputation based on

22  defendant "leading consumers and others in the trade to believe that [plaintiff] is engaged in illegal

23  conduct" to be an "injur[y] to precisely the sorts of commercial interests that the [Copyright] Act

24  protects."). But if the only entity that the public is familiar with is Kitchen Cube, that does not show

25

26  _____

27  [11] At the hearing, Leszczynski informed the Court that another 3D print file designer (Benchy), recently sold its business for significant profit based on its reputation cultivated by publicly releasing 3D print files. This evidence is not in the record. Even if it were, there is no evidence that the value of Leszczynski's business—

28  should he, too, pursue this path—would be reduced as a result of the Defendants purported violation.

that Leszczynski's reputation is worse than it would have been if not for Defendants actions. There is no evidence in the record that any one was confused, or Leszczynski's reputation on Thingiverse (where the reputation was purportedly ws developed in the first place) was harmed by Defendants.

Because Leszczynski has not shown any cognizable harm, his Lanham Act claim fails. The MSJ is GRANTED as to the Lanham Act claim, and the second cause of action is DISMISSED.

### C. Leszczynski Has Not Shown Any Basis for Holding any Duffy, Toltz, Ruble, or Spencer Liable.

Defendants next argue that the claims against the individual Defendants—Duffy, Toltz, Ruble, and Spencer—fail because Leszczynski has not shown that they were engaged in the marketing or sale of Cubes except through the corporate entities. The Court finds that the claims against the individual defendants fail because Leszczynski has neither shown that alter ego doctrine applies nor that the individual Defendants sold Cubes in their personal capacities.

A corporation is generally regarded as a "a legal entity separate and distinct from its stockholders, officers and directors," and such individuals are typically not personally liable for wrongs committed by the corporation. *See Capon v. Monopoly Game LLC*, 193 Cal. App. 4th 344, 357 (2011). There is an exception, the alter ego doctrine, "where a corporation is used by an individual or individuals, or by another corporation, to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." *See id.* Although the analysis is case-specific, there are generally two requirements for alter ego liability: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *See Shaoxing Cnty. Huayue Imp. & Exp. v. Bhaumik*, 191 Cal. App. 4th 1189, 1198 (2011). Courts consider factors including "the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other." *See id.*

Leszczynski has provided no evidence as part of the Motion on any of the factors listed above. Although Leszczynski alleges in his FAC that there is alter ego liability, he has not shown

1    that there is any commingling of funds, has not shown disregard of corporate formalities, and has

2    not provided any other evidence on which a jury could find alter ego liability. Although

3    Leszczynski asserts that there was comingling of funds, he cites no evidence in support. *See* AUF ¶

4    60. A moving party may prevail on an MSJ by showing "that there is an absence of evidence to

5    support the nonmoving party's case." *Nissan Fire*, 210 F.3d at 1102 (9th Cir. 2000). Thus, The

6    Court finds that the theory of alter ego liability fails.

7          Leszczynski submitted additional evidence after receiving the Court's Tentative Ruling.[12]

8    This evidence also does not prove that alter ego liability would apply. Leszczynski points to a series

9    of transactions that the various corporate entities allegedly made, which Leszczynski argues show

10   that there was commingling of funds. *See* ECF Nos. 163-1, 163-2. But the only evidence cited that

11   these transactions occurred is Leszczynski's Requests for Production that reference them. *See, e.g.*,

12   ECF No. 163-3 at 2 "Produce all documents and electronically stored information relating to the

13   online transfer of $200.00 on 9/18/2020 . . ."). This Request for Production does not prove that the

14   transaction occurred.[13] But even if the Court assumes that the transactions occurred, the fact that

15   money went in and out of the companies does not, absent further evidence, show that commingling

16   of funds occurred such that alter ego liability would apply. Although this is one possible factor, it is

17   not alone dispositive. Leszczynski also provided Defendants' responses to various requests for

18   admission, including some directed at issues that bear on alter ego liability. *See, e.g.*, ECF No. 164-

19   3 at 3 ("Request No. 4[:] Personal Expense Funds: Admit that Altamatic LLC's funds have been

20   utilized for the personal expenses of Timothy A. Duffy. Response to Request No. 4[:] Denied.").

21   Having reviewed these, the Court sees nothing in them that suggests that alter ego would apply.

22   _____

23   [12] It was not proper for Leszczynski to submit this evidence at the time he did. The Court's Tentative Rulings

24   are intended to assist parties in hearing preparation, and are not an invitation to submit more evidence or argument to rebut the Tentative Ruling. Nevertheless, given Leszczynski's *pro se* status, and given the

25   confusion that appears to have occurred regarding whether this Motion for Summary Judgment was timely, the Court will consider this evidence.

26   [13] Leszczynski explained that certain financial records were produced with a confidentiality designation, and

27   that he will file the evidence if the Court removes that designation. The Court cannot evaluate whether that designation was proper based on this record. But regardless, there are procedures for filing confidential

28   documents, and so Leszczynski could have filed the underlying evidence. *See* C.D. Cal. L.R. 79-5.2.2. He failed to do so.

1    Leszczynski has not provided enough evidence that any reasonable juror could find alter ego

2    liability. *See Shaoxing*, 191 Cal. App. 4th at 1198.

3    　　Leszczynski also has not shown that any individual Defendants personally sold Cubes.

4    Leszczynski argues that the responses to the take-down notices show (referred to in the DMCA as

5    "counter notifications") that the individual Defendants conceded that they sold Cube, or show that

6    the individual Defendants "took direct responsibility for the infringing sales." *See* ECF No. 141-1 at

7    32. But the responses do not show that the individual Defendants sold Cubes or took responsibility

8    for the sales. *See* ECF Nos. 141-35, 141-37, 141-38. Instead, the individual Defendants merely

9    stated that they had a good faith belief that the corporations' material should not have been taken

10   down. *See id.* There is nothing in the notices that indicates that they are made by the individual

11   Defendants in their personal capacity. *See id.* Although the relevant provision of the DMCA (17

12   U.S.C. 512(g)) limits counter notifications to "subscribers," where the subscriber is a corporation, it

13   would appear that because a corporation cannot sign a document, an individual must always sign on

14   the corporation's behalf. No authority suggests that signing on behalf of a corporation makes an

15   individual personally liable for the corporation's acts. There is no material dispute that the counter

16   notifications were signed on behalf of the corporations.

17   　　For these reasons, the MSJ is GRANTED as to Duffy Toltz, Ruble, and Spencer. The first

18   cause of action is DISMISSED as to these Defendants.

19   　　**D. Counterclaimants Are Not Entitled to Summary Judgment on Their Counterclaim,
        and the Court Declines to Grant Summary Judgment to Leszczynski on the**

20   　　**Counterclaim.**

21   　　Finally, Defendants argue that Kitchen Cube, Altamatic, and Insider Goods should be

22   granted summary judgment as to their counterclaim. The Court finds that the undisputed facts do not

23   definitively show whether Leszczynski knowingly made misrepresentations, and so the MSJ is

24   DENIED as to the counterclaim.

25   　　The Counterclaim is for violation of 17 U.S.C. Section 512(f), which prohibits "knowingly

26   materially misrepresent[ing] that that material or activity is infringing" a copyright in issuing a take-

27   down notice. *See* 17 U.S.C. § 512. Neither party cited any case law interpreting this statute, but the

28   Court finds that the statute unambiguously would not apply unless Leszczynski "knowingly" made a

material misrepresentation in the take-down notices. *See id.* Thus, the key questions here are whether the evidence shows that Leszczynski made such a misrepresentation, and whether he did so knowingly.

Here, there is very little evidence that Leszczynski *knowingly* misrepresented the status of his copyright or anything else in his take-down notices. Defendants focus on Leszczynski's statement that he was the "copyright owner" of the Cube design. *See* ECF No. 141-1 at 34. The evidence suggests that when Leszczynski issued the take-down notices, his copyright application had not yet been ruled upon, and so he did not have a valid copyright registration when he stated that he was a copyright owner. *See* ECF No. 141-39 (dated August 6, 2023, before the Copyright Office denied the application on November 20, 2023). But this alone does not show that he knowingly made a misrepresentation. In certain circumstances, an author of a copyrightable work will gain copyright protection "immediately upon the work's creation." *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019). Although certain claims require registration as a prerequisite, the author has certain rights prior to registration. *See id.* So, the mere fact that he did not yet have registered copyright does not show that Leszczynski *knowingly* made a material misrepresentation when he stated that he owned a copyright. Leszczynski appears to have believed in good faith that his 3D print files were copyrightable, and thus may not have knowingly made any misrepresentation when he issued the take-down notices. The fact that Leszczynski later learned that the work in question was not copyrightable does not retroactively make his statements knowing misrepresentations.

Defendants further argue that Leszczynski never updated or retracted his take-down notices when his application was rejected and he realized the work was not copyrightable. *See* ECF No. 141-1 at 34. But Defendants cite no authority suggesting that this is required, and the statute does not appear to require supplementing a take-down notice upon receiving information that shows it was inaccurate. The Court finds that the statute requires that the knowledge of falsity coincide with the submission of the take-down notice, and so will not grant Kitchen Cube, Altamatic, and Insider Goods summary judgment as to their counterclaim.

Given the scant evidence of a knowing misrepresentation described above, the Court

considered whether to grant summary judgment to Leszczynski on the counterclaim under Rule

56(f). *See* ECF No. 167 (notifying the parties that the Court was considering this, and ordering

briefing). In response, Defendants have identified some evidence from which a jury could find that

Leszczynski knew or should have known that his statement that he was a copyright owner was a

misstatement. First, in an email on July 31, 2023, prior to filing suit on September 13, 2023,

Leszczynski stated to Defendants that "I have consulted with IP attorneys who specialize in this area,

and they have affirmed the validity of my claims." *See* ECF No. 141-64 at 3. Second, in his

deposition on September 12, 2024, Leszczynski testified as follows in response to Defendants'

questions:

> Q Okay. While we're on the subject of attorneys, without telling me anything that you may have asked of or communications you received from any attorney, did you ever consult an attorney with respect to this case?
> A You have to define "consult."
> Q: Okay. Did you ever discuss the case in any -- okay, let's divide it up into two things. Obviously you had a claim or claims and you decided to file the lawsuit. Prior to filing the lawsuit, did you discuss the substance of your claims in any meaningful detail with any attorneys? Just yes or no, please.
> A: I don't believe -- in very rough terms. We are talking about two-minute conversations.
> Q: Okay. So you had a brief conversation with an attorney, but nothing beyond that with regard to your potential case at that time?
> A That is correct.
> Q: Okay. And did you ever hire that attorney?
> A: No, I did not.
> Q: Okay. Since filing the case, have you consulted with any attorneys about it?
> A:No.
> Q: Have you ever consulted with an attorney about any of your efforts to secure intellectual property
> protection? By that, I mean somebody to help you with trademark filing or copyright filings, or anything of that nature.
> A: No.

ECF No. 176-2 at 1–2.[14] Defendants assert that this testimony is inconsistent with Leszczynski's

prior statement that he consulted with an attorney, and argue that from this inconsistency, a jury

---

[14] In the hearing, the parties discussed this evidence and characterized it differently. Defendants argued that Leszczynski testified that he never consulted with an attorney, in contradiction to his previous statement in the email. Leszczynski argued that this is a mischaracterization of his testimony. Having reviewed the testimony, the Court finds that neither party made any misstatement to the Court, and that each parties' description of the testimony was within the bounds of zealous advocacy and fair argument as to what the

1    could draw an inference that Leszczynski acted in bad faith in filing the DMCA takedown notices.

2    *See* ECF No. 176. The Court understands Defendants' argument to be that either a jury could draw

3    an inference that Leszczynski was being untruthful in one of the statements above, and in fact

4    received advice from an attorney that his claims of copyright ownership were not meritorious, or that

5    he was willfully blind as to the fact that his claim of copyright ownership were not meritorious. The

6    Court finds that a jury could find for Defendants based on this evidence. As the Supreme Court has

7    explained in another context, to act "knowingly" means not only to act with actual knowledge, but

8    also to act "with an awareness of the high probability of the existence of the fact in question." *See*

9    *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976). Here, based on the fact that Leszczynski

10   admits to have spoken (at least briefly) with an attorney, and that Leszczynski made statements

11   about that conversation that could be described as inconsistent (as he initially stated that the attorney

12   confirmed the validity of his claims, and later stated the conversation was only very brief and

13   "rough"), a jury could conclude that Leszczynski either knew or was willfully blind to the fact that

14   he was not the valid owner of a copyright. Because a jury could find as such, the Court declines to

15   grant summary judgment to Leszczynski.

16       However, a jury could also find that Leszczynski did not have this knowledge and was not

17   willfully blind. In other words, Defendants have not established that the undisputed facts show that

18   Leszczynski acted in bad faith. Thus, Defendants' MSJ is DENIED as to the Counterclaim.

19       **VI.    Conclusion**

20       For the reasons stated herein, the MSJ is GRANTED IN PART:

21       1.   The MSJ is GRANTED as to all claims against Duffy Toltz, Ruble, and Spencer. All

22            claims against these individuals are DISMISSED.

23

24

25

26    _____

27    testimony represented. Leszczynski did indeed testify that he only briefly spoke to an attorney, and he pushed
     back on Defendants' use of the word "consult," and so the Court does not find Defendants' description to be a
     misstatement to the Court. But Leszczynski's description that he did indeed testify that he spoke to an
28    attorney is also not inaccurate.

2.  The MSJ is otherwise DENIED as to Leszczynski's first cause of action for breach of contract. This claim may proceed to trial against Kitchen Cube, Altamatic, and Insider Goods.

3.  The MSJ is GRANTED as to Leszczynski's second cause of action for a Lanham Act violation. This claim is DISMISSED as to all Defendants.

4.  The MSJ is DENIED as to Kitchen Cube, Altamatic, and Insider Goods's Counterclaim. The Court also declines to grant summary judgment to Leszczynski on the Counterclaim. This claim may proceed to trial.

5.  The parties are ORDERED to complete settlement proceedings before the assigned Magistrate Judge within sixty (60) days of the date of this Order.  Within 10 days after the conclusion of the settlement for proceedings, the parties must file a joint report of the proceedings.

6.  The pretrial and trial dates are vacated pending the outcome of the settlement proceedings.


IT IS SO ORDERED.


Dated: April 4, 2025            _____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge